[No. 11173. Department One. September 27, 1913.]

THOMAS JOHNSON et al, *Respondents*, v. IRVINE LUMBER COMPANY, *Appellant*.[1]

WITNESSES—FORM OF ANSWER. Where a witness started to answer as to what he had been told about the ownership of logs, and upon objection, was asked if he knew, and then answered that they belonged to the defendant, the appellant cannot urge error in the trial court's interpretation of the answer as a statement on his own knowledge rather than a continuation of the first answer, where appellant did not cross-examine or offer independent evidence.

NAVIGABLE WATERS—OBSTRUCTIONS—LOG JAMS—INJURY TO LANDS —PERSONS LIABLE—JOINT TORT FEASORS. Where the defendant placed

[1]Reported in 135 Pac. 217.

logs in a river without giving them reasonable care, and such failure resulted in forming a jam, commingled with the logs of others, which was not removed within a reasonable time and was the direct and proximate cause of injury to plaintiff's land, the defendant is liable for the entire damage as a joint tort feasor, as the independent negligence of several concurred in producing the single injury.

SAME—EVIDENCE—PRESUMPTION.   The fact that six hundred out of eight hundred logs forming a jam in a river belonged to the defendant, raises a presumption that the defendant put them in the river and suffered them to be carried by the current; and defendant would be liable for damages without proof of actual knowledge of the jam if it permitted the logs to form an obstruction and remain for an unreasonable length of time.

DAMAGES—EXCESSIVE DAMAGES—INJURIES TO REAL ESTATE.   Where witnesses estimated damages to land from a log jam which caused the loss of nine acres, at from $4,000 to $10,000, a verdict for $5,000 is not excessive.

APPEAL—REVIEW—HARMLESS ERROR—ADMISSION OF EVIDENCE.   In an action for damages to land from a log jam, it is harmless to receive in evidence rules of the war department regulating the driving of logs in the navigable portion of the river, to the effect that drivers shall prevent the formation of jams, where instructions to the jury made the liability depend upon defendant's failure to remove the jam within a reasonable length of time.

Appeal from a judgment of the superior court for Snohomish county, W. P. Bell, J., entered December 14, 1912, upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort.   Affirmed.

*Howard Hathaway*, for appellant.

*M. J. McGuinness* and *Robert McMurchie*, for respondents.

GOSE, J.—The plaintiffs own a tract of land comprising about 144 acres.   The Snohomish river flows through the southwest forty of this tract.   The complaint alleges that, during the summer and fall of 1911 and the winter and spring of 1912, the defendant placed in the Snoqualmie river, a tributary of the Snohomish river, a large quantity of loose logs which, unattended, were permitted to flow down said river and to form a jam in the Snohomish river at a point opposite the plaintiffs' land; that the jam was permitted to re-

main for a long period of time and that it caused the current of the river to deflect towards and across the plaintiffs' land, washing away about nine acres and otherwise injuring it, to the plaintiffs' damage in the sum of $7,500. The case was tried to a jury, terminating in a verdict in favor of the plaintiffs for $5,000, for which sum a judgment was entered. This appeal followed.

The court instructed the jury:

"You are further instructed that, before you can find for the plaintiff in any amount, you must first find by a preponderance of the evidence that the defendant failed to use ordinary care in looking after its logs, and that such failure resulted in a log jam opposite the plaintiff's premises and that such jam was permitted to remain there an unreasonable length of time and did damage to the plaintiff's premises. You must further find that such negligence, if any, on the part of the defendant in failing to remove said jam, if there was one, in a reasonable time, was the direct and proximate cause of the washing away of the plaintiff's premises, if they washed away or eroded."

The court further instructed that, if the jury should find from the evidence that a log jam was formed at a point in the Snohomish river near the respondents' land, by reason of which their land was damaged, and if they should find that the logs forming the jam were not all, or were not even mostly, the logs of appellant, but that they belonged to several owners, each of the several owners of the logs forming the jam would be liable for the whole injury, and that the respondent might sue one or any number or all of the owners.

There were about eight hundred logs in the jam. About six hundred were marked double-bar-twelve. A few, how many was not stated, were branded "D. E." which was admitted to be the appellant's registered mark. The appellant contends that there is no evidence that it owned the double-bar-twelve logs. The only evidence touching the ownership of the logs bearing this mark is as follows:

"Q. Do you know whose brand that is; who owns the logs branded double-bar-twelve? A. What I have been told and understood ·that they——. Mr. Alston:· We object to his stating what he has been told. Q. Do you know? A. That they belong to the Irvine Lumber Company. Q. The defendant in this action? A. Yes, sir. Mr. Alston: We move to strike the answer upon 'the ground it is based upon what he has been told. The Court: Counsel asked if he knew and he stated then who it was. Mr. Alston: I think that was a continuation of his former answer. The Court: Oh, I think I will let the answer stand. Defendant excepts. Q. Is that the defendant in this action? A. Yes, sir."

If the appellant was not satisfied with the court's interpretation of the evidence, it could have inquired upon cross-examination, or it could have offered independent evidence, if it had any, that it did not own the logs. It did neither. The witness evidently intended to say that these logs were owned by the appellant.

The appellant contends that the damage to the respondents' land was caused by the acts of several owners of logs who had no common interest, and who acted independently of each other, and that it is only liable for such injury as was caused by the presence of its logs in the jam. We think the instructions announce correct legal principles. If the appellant failed to use reasonable care in looking after the logs after they were placed in the river, and its failure resulted in the formation of a log jam opposite the respondents' land, and the jam was not removed within a reasonable time, and its presence was the direct and proximate cause of the injury to the land, the appellant is liable for the entire damage. This is because negligence of the several owners of the logs concurred in producing a single indivisible injury, hence there was a joint and several liability. It was the duty of the several owners to break the jam within a reasonable time. Despite this duty, they permitted the logs to form a wing dam opposite the respondents' land and to remain for several months and until carried away by a freshet. The appellant

says in its brief: "The jam was forming for several weeks or months." A witness testified that four of five men with a donkey engine could have removed the jam in one day, and this testimony was not controverted. The appellant was charged with notice of the physical condition of the river. The evidence shows that there were gravel bars in the river adjacent to the respondents' land. The evidence is that in low water logs striking these bars were arrested in their course; that jams were gradually formed in this way; and that they would remain until removed by the aid of man or by freshets, which occurred at least twice a year.

The authorities are in conflict on the question of a joint and several liability where a wrong results from the independent acts of two or more persons who have no common interest. What we deem the correct rule is found in 1 Cooley on Torts (3d ed.), pp. 246, 247, as follows:

"In respect to negligent injuries, there is considerable difference of opinion as to what constitutes joint liability. No comprehensive general rule can be formulated which will harmonize all the authorities. The authorities are, perhaps, not agreed beyond this, that where two or more owe to another a common duty and by a common neglect of that duty such other person is injured, then there is a joint tort with joint and several liability. The weight of authority will, we think, support the more general proposition, that, where the negligence of two or more persons concurs in producing a single, indivisible injury, then such persons are jointly and severally liable, although there was no common duty, common design or concert action. In a recent New Jersey case it is said: 'If two or more persons owe to another the same duty, and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well settled principles, each, any or all of the tort feasors may be held. But when each of two or more persons owes to another a separate duty which each wrongfully neglects to perform, then although the duties were diverse and disconnected and the negligence of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally

joint and the tort feasors are subject to joint and several liability.' "

This rule was recognized in *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649, and in a general way in *Abb v. Northern Pac. R. Co.*, 28 Wash. 428, 69 Pac. 954, 92 Am. St. 864, 58 L. R. A. 823. In the *Doremus* case, it was said:

"The general rule undoubtedly is that where one has received an actionable injury at the hands of two or more persons acting in concert, or acting independently of each other, if their acts unite in causing a single injury, all of the wrong doers, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and he may enforce the liability in an action against them all jointly, or any one of them severally, or against any number of them less than the whole. While the wrong committed is the joint wrong of the several parties participating therein, it is also, in contemplation of law, the several wrong of each of the participants."

That was a personal injury suit growing out of a collision between two railroad trains caused by the alleged negligence of the conductor of one of the trains. The suit was prosecuted against the railroad company and the offending conductor. There was a judgment in favor of the conductor and against the company. It was held that the company and the conductor were not joint tort feasors; that the company was liable, if liable at all, because of, and only because of, the negligence of the conductor based upon the doctrine of *respondeat superior*, and that the judgment in favor of the conductor acquitted the master of liability.

In the *Abb* case, the plaintiff sued the railroad company to recover for personal injuries received in a collision between one of its trains and a street car of another company. The question there was whether the release of the street car company from liability for damages, released the railroad company. It was held that there was but one wrong and that was a joint wrong of the two companies and that,

"It is, and has long been, a generally recognized rule that there is no line of separation between the liability of joint tort feasors. The tort is a thing integral and indivisible, and any claim for injuries arising therefrom runs through and embraces every part of the tort. The liability of one cannot be carried into any portion of the joint tort that is not followed by an equal liability of the other tort feasors. Each is liable for the whole, and the injured party may pursue one separately, or he may pursue all jointly, or any number jointly less than the whole number."

We have examined the authorities cited by the appellant, and insofar as they announce a different rule, we prefer not to follow them.

The appellant next contends, in effect, that the presence of its logs in the jam raises no presumption, either that it was negligent, or that it had any knowledge that its logs were there. The fact that more than six hundred of the eight hundred logs in the jam were shown to be its property raises a presumption that it put them in the river and that it suffered them to be carried at the will of the current. If it did put them into the river to float to market unattended, it cannot claim immunity from liability if it permitted them to form an obstruction and permitted the obstruction to exist for an unreasonable length of time, to the respondents' damage.

It is argued that the damages awarded are excessive. It is sufficient to say that the witnesses variously estimated the damages at from $4,000 to $10,000. Upon such testimony, we cannot say that a verdict of $5,000 is excessive.

The court admitted in evidence the rules promulgated by the secretary of war regulating the driving of logs in the navigable parts of the Snoqualmie and Snohomish rivers. These rules were promulgated pursuant to an act of Congress, approved May 9, 1900 (31 Stats. at Large, 172, ch. 387), authorizing the secretary of war to make regulations governing the running of loose logs on certain rivers, including the

Snoqualmie and Snohomish. In effect, the rules provide that river drivers shall so conduct their operations as to prevent the formation of jams. If the admission of these rules in evidence was error at all—which we need not decide—it was harmless, in the light of the instructions.

The judgment is affirmed.

CROW, C. J., PARKER, MOUNT, and CHADWICK, JJ., concur.