[No. 11173.  *En Banc*.  May 7, 1914.]

THOMAS JOHNSON *et al.*, *Respondents*, v. IRVINE LUMBER COMPANY, *Appellant*.[1]

NAVIGABLE WATERS — OBSTRUCTIONS—LOG JAMS—RIPARIAN RIGHTS —INJURY TO BANKS—INSTRUCTIONS.  A logger owning a considerable number of logs forming a jam through want of reasonable care in looking after the logs, who does not remove the jam within a reasonable time, is liable to riparian owners where the jam was the proximate cause of injury to the land; but it is error to instruct that each of several owners would be liable for the whole injury, where there was evidence warranting the jury in finding that the defendant owned only a very few of the 800 logs forming the jam and that the owners had acted independently of each other in putting the logs in the river.

SAME—LOG JAMS—INJURY TO BANKS—EVIDENCE—ADMISSIBILITY. In an action by a riparian owner for injuries to land by reason of a log jam caused by defendant's logs and failure to remove the jam within a reasonable time, the rules of the secretary of war regulating the driving of loose logs on certain navigable waters, to the effect that operations must be conducted to prevent the formation of jams, are inadmissible, since the injury was not sustained while exercising a right of navigation.

Appeal from a judgment of the superior court for Snohomish county, W. P. Bell, J., entered December 14, 1912,

[1]Reported in 140 Pac. 577.

upon the verdict of a jury rendered in favor of the plaintiffs, in an action in tort. Reversed.

*Howard Hathaway*, for appellant.

*M. J. McGuinness* and *Robert McMurchie*, for respondents.

On Rehearing.

Gose, J.—This is an action for damages for washing away a portion of the plaintiff's land. It is alleged in the complaint that the defendant placed a large quantity of loose logs in the Snoqualmie river, a tributary of the Snohomish river, which were carried down the river by the current, unattended, and formed a jam in the Snohomish river at a point opposite the plaintiffs' land; that it permitted the jam to remain for a long period of time, and that the jam deflected the current of the river against the plaintiffs' land, washing away about nine acres and otherwise injuring it. There was a verdict and judgment for the plaintiff for $5,000. The defendant appealed.

For a fuller statement of the facts reference is made to the former opinion. *Johnson v. Irvine Lumber Co.*, 75 Wash. 539, 135 Pac. 217. The evidence shows that there were about 800 logs in the jam, 600 of which were marked double-bar-twelve. A few—how many is not stated—were branded "D. E.," which is admitted to be the appellant's registered mark. There was evidence which would have warranted the jury in finding that the 600 double-bar-twelve logs belonged to the appellant. There is no evidence that it owned any of the remaining 200 logs except a few marked "D. E." The court instructed, in effect, that, if the jury should find from the evidence that a jam was formed at a point in the river near the land of the respondents, by reason of which their land was damaged, and if they should find that the logs forming the jam "were not all, or were not even mostly," the logs of the appellant, but that they belonged to several owners, each of the several owners of the logs forming the jam

would be liable for the whole injury, and the respondents might sue one or any number or all of the owners.

We think this instruction was erroneous, as applied to the facts of the instant case. The jury may have reached the conclusion that the 600 logs did not belong to the appellant. In that event, there is no evidence that it owned more than a few of the logs. We adhere to the view that, if the appellant owned a considerable number of the logs and failed to use reasonable care in looking after them after they were placed in the river, and its failure resulted in the formation of a log jam opposite the respondents' land, and the jam was not removed within a reasonable time, and its presence was the proximate cause of the injury to the land, the appellant is liable for the entire damage. This is upon the principle that the creation of the jam created a new condition, and that permitting it to remain an unreasonable length of time was negligence; that all the owners owed a common duty to remove the jam; and that, because of a common neglect of that duty, the respondents were injured, hence there was a joint tort and a joint and several liability. We think, however, this view would be too harsh if the jury should reach the conclusion that the appellant owned only a few of the logs, and that the several owners acted independently of each other in putting the logs in the river. In such case, it should only be held liable for the injury that it caused. But liberal damages should, because of the difficulty of apportionment, be awarded against it.

The court admitted in evidence the rules promulgated by the secretary of war, regulating the driving of logs in the navigable parts of the Snoqualmie and Snohomish rivers. These rules were promulgated pursuant to an act of Congress approved May 9, 1900 (31 Stats. at Large, 172, ch. 387), authorizing the secretary of war to make regulations governing the running of loose logs on certain rivers, including the Snoqualmie and Snohomish. The rules, in effect, provide that river drivers shall so conduct their operations

as to prevent the formation of jams.    The rules were not competent evidence.    They were promulgated in aid of navigation, not for the protection of the owners of the banks of the rivers.    If the respondents had sustained an injury while they were lawfully exercising a right of navigation, a different question would be presented.

For the reasons stated, the judgment is reversed, with directions to grant a new trial.

CROW, C. J., ELLIS, CHADWICK, MORRIS, and MOUNT, JJ., concur.