[No. 3454. Decided January 7, 1901.]

F. C. DOREMUS, *Respondent,* v. SAMUEL ROOT, *Defendant,* OREGON RAILROAD AND NAVIGATION COMPANY, *Appellant.*

MASTER AND SERVANT—JOINT ACTION AGAINST FOR NEGLIGENCE— VERDICT FOR SERVANT—LIABILITY OF MASTER.

In an action against a master and servant jointly to recover damages, where the negligence of the servant is the gist of the cause of action, and the master could be rendered liable only on the theory of *respondeat superior,* judgment against the master is erroneous when the verdict and judgment in the action exonerate the servant as being free from negligence.

##### SAME—APPEAL.

Where one judgment is entered against the master and another in favor of the servant, in an action against them jointly to recover damages on account of the negligent act of the servant within the scope of his employment, and the judgment in favor of the servant is allowed to remain unappealed from and unreversed, the supreme court on appeal from the judgment against the master is warranted, upon its reversal, in directing judgment to be entered in favor of the master, since the judgment in favor of the servant stands as a conclusive bar against recovery from the master.

##### SAME.

In an action against a master and servant, for the wrong of the servant, in which the verdict finds the master guilty of negligence and makes no reference to the servant, the ruling of the court in construing the verdict as a finding in favor of the servant is action adverse to the plaintiff rather than to the master, and the latter may avail itself of the judgment in favor of the servant based upon such verdict, even if it did not except to the verdict nor the court's construction thereof.

Appeal from Superior Court, Whitman County.—Hon. WILLIAM McDONALD, Judge. Reversed.

*Cotton, Teal & Minor,* for appellant.

*M. O. Reed,* for respondent.

The opinion of the court was delivered by

FULLERTON, J.—This is an action brought by the respondent against the appellant, the Oregon Railroad & Navigation Company, and the defendant, Samuel Root, to recover damages for a personal injury alleged to have been caused by the negligence of Root while acting as conductor on one of the appellant's freight trains. The respondent and the defendant Root were employees of the appellant, the one in the capacity of fireman and the other as conductor. On November 13, 1898, a freight train known as "Extra 149," drawn by the engine on which respondent was acting as fireman, left Starbuck, in Columbia county, and proceeded in the direction of Winona, in Whitman

county, both places being in this state. At about the same
time a freight train known as "Extra 151," on which Root
was conductor, left Winona and proceeded in the direction
of Starbuck. The conductor and engineer on each train
were notified before leaving their respective stations of
the approach of the other train, and were instructed to
meet and pass at a station known as "Canyon Siding,"
where there was a side track, by means of which trains
running in opposite directions could pass each other with
safety. The rules of the company, as shown by the evi-
dence, required the train first reaching a station where
opposing trains were ordered to meet to enter the side
track and there wait until the opposing train passed. For
some reason conductor Root did not obey his orders, but
permitted his train to run past Canyon Siding and collide
a short distance from that place with extra 149. The col-
lision caused the injury to the respondent for which this
action was brought. In his complaint the respondent al-
leges that Root, by virtue of his employment, had the
charge and control of all trains on which he was employed
as conductor, and of all persons employed on it, and was
responsible for its movements while on the road; that as
such conductor he had charge of the train hereinbefore
mentioned known as extra 151, and negligently, carelessly,
and recklessly permitted said train to run past Canyon
Siding, well knowing that the same was liable to collide
with the train on which the respondent was acting as fire-
man; that "by reason of the carelessness, negligence, and
recklessness of the said Samuel Root, and through no fault
of this plaintiff whatsoever," the injuries suffered by said
plaintiff were received. While there is a general allegation
in the complaint that the appellant itself was negligent,
the complaint as a whole negatives the idea that there was
any negligence on the part of the appellant or any of its

officers or employees other than the negligence of the defendant Root. Issue was taken upon the allegations of the complaint by both the appellant and the defendant Root, each answering separately, denying the allegations of negligence. A trial of the cause was had on the issues as thus framed, and the following verdict was returned by the jury: "We, the jury, sworn and empaneled to try the above-entitled cause, find for the plaintiff and against the defendant, the Oregon Railroad & Navigation Company, and assess his damages at the sum of $15,100, and the costs of this action." After the verdict was read, but before the jury was discharged, the attorney for defendant Root inquired of the court what construction the court would place upon the verdict with respect to the defendant Root, "and thereupon," to quote from the record, "the court ruled that said verdict was and should be considered as a verdict in favor of defendant Root." The verdict was then recorded and the jury discharged. Afterwards, and on June 19, 1899, a judgment was entered in favor of Root and against the plaintiff for the amount of Root's costs. Within the statutory time after the return of the verdict the appellant moved for a new trial and in arrest of judgment, which motion being overruled, it moved for judgment in its favor on the whole record, which was also overruled, and, on July 23, 1900, judgment was entered against it for the amount of the verdict. This appeal is from the last mentioned judgment.

The general rule undoubtedly is that where one has received an actionable injury at the hands of two or more persons acting in concert, or acting independently of each other, if their acts unite in causing a single injury, all of the wrong doers, however numerous, are severally liable to him for the full amount of damages occasioned by such injury, and he may enforce the liability in an action

against them all jointly, or any one of them severally, or against any number of them less than the whole. While the wrong committed is the joint wrong of the several parties participating therein, it is also, in contemplation of law, the several wrong of each of the participants. Cooley, Torts (2d ed.), p. 153. On this principle, at common law a jury in actions *ex delicto* against several persons, contrary to the rule in actions *ex contractu*, were permitted to find against one or more of the defendants and in favor of the others. The rule with regard to actions *ex delicto* remains the same under the Code; and the practice now permits the jury in an action for tort against several defendants to return a verdict against so many of them as the proofs show are guilty of the wrong charged and in favor of the others. As it is the peculiar province of the jury to determine the guilt or innocence of the several defendants, a verdict finding in favor of some and against others, even though there may be no very apparent reason for the distinction made, is not for that reason alone so far arbitrary or inconsistent as to require a reversal of the judgment entered thereon against those who have been found guilty. *Gulf, C. & S. F. Ry. Co. v. James,* 73 Tex 12 (10 S. W. 744, 15 Am. St. Rep. 743). It seems to be equally well settled, also, that silence of the verdict as to one of the defendants will not vitiate it as against the others. Such a verdict is treated as a finding in favor of the defendant not named on all of the issues, on which he is entitled to a judgment that plaintiff take nothing by his action. *Howard v. Johnson,* 91 Ga. 319 (18 S. E. 132); *Kinkler v. Junica,* 84 Tex. 120 (19 S. W. 359); *Gulf, C. & S. F. Ry. Co. v. James,* 73 Tex. 12 (10 S. W. 744); *Jones v. Grimmet,* 4 W. Va. 104; *Westfield Gas & Milling Co. v. Abernathy,* 8 Ind. App. 73 (35 N. E. 399).

These general rules are relied on by the respondent to sustain the judgments entered in the court below. It must

be borne in mind, however, that there are wide distinctions between the ordinary action for injuries, where all of the defendants participated in the wrongful act which caused the injury, and actions like the one before us, where one is liable because he committed the act and the other by operation of law, both with respect to the relations of the defendants to each other and to the injured person. Joint tort feasors are liable to the injured person (other than that he may have but one satisfaction), as if the act causing the injury was the separate act of each of them, and they have, except in certain special cases, no right of contribution among themselves. But the defendants in this character of action are in no sense joint tort feasors, nor does their liability to the plaintiff rest on the same or like grounds. The act of an employee, even in legal intendment, is not the act of his employer, unless the employer either previously directs the act to be done or subsequently ratifies it. For injuries caused by the negligent act of an employee not directed or ratified by the employer, the employee is liable because he committed the act which caused the injury, while the employer is liable, not as if the act was done by himself, but because of the doctrine of *respondeat superior*—the rule of law which holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business. The primary liability to answer for such an act, therefore, rests upon the employee, and when the employer is compelled to answer in damages therefor he can recover over against the employee. *Oceanic Steamer Nav. Co. v. Compania Transatlantica Espanola,* 134 N. Y. 461 (31 N. E. 987, 30 Am. St. Rep. 685); note to *Village of Carterville v. Cook,* 16 Am. St. Rep. 248; 1 Shearman & Redfield, Negligence (5th ed., § 242); 2 Van Fleet, Former Adjudication, p. 1162.

So, where the employer is sued separately for the wrong, he can bind the employee in any judgment that may be obtained against him, by notifying the employee to come in and defend the action. This rule is well stated in *Little-ton v. Richardson,* 34 N. H. 179 (66 Am. Dec. 759) in the following language:

"But when a person is responsible over to another, either by operation of law or by express contract, and he is duly notified of the pendency of the suit and re-quested to take upon him the defence of it, he is no longer regarded as a stranger, because he has the right to appear and defend the action, and has the same means and advantages of controverting the claim, as if he was the real and nominal party upon the record. In every such case, if due notice is given to such person, the judg-ment, if obtained without fraud or collusion, will be con-clusive against him, whether he has appeared or not."

See, also, *Strong v. Phoenix Ins. Co.,* 62 Mo. 289 (21 Am. Rep. 417); *Boston v. Worthington,* 10 Gray, 496.

So, also, in such an action, whether brought against the employer severally, or jointly with the employee, the gravamen of the charge is, and must be, the negligence of the employee, and no recovery can be had, unless it be proven, and found by the jury, that the employee was negli-gent. Stated in another way: if the employee who causes the injury is free from liability therefor, his employer must also be free from liability. This was held in *New Orleans & N. E. R. R. Co. v. Jopes,* 142 U. S. 18 (12 Sup. Ct. 109). In that case the plaintiff below was a passenger on the train of the defendant, and while such passenger was shot by the conductor of the train and seri-ously injured. The trial court ruled that the plaintiff was entitled to recover compensatory damages from the com-pany, even though it was made to appear that the con-ductor had reasonable cause to believe that an assault with a knife was about to be made on him by the plaintiff, and

that it was necessary to shoot the plaintiff in order to pro-
tect himself from great bodily harm; holding that such be-
lief on the part of the conductor would not relieve the com-
pany, if the facts were that the plaintiff had no design to
injure the conductor, and was not intentionally acting so
as to indicate such design. This was held error by the su-
preme court. In the course of the opinion it was said:

"It would seem on general principles that if the party
who actually causes the injury is free from all civil and
criminal liability therefor, his employer must also be en-
titled to a like immunity. * * * * If the immediate
actor is free from responsibility because his act was law-
ful, can his employer, one taking no direct part in the
transaction, be held responsible? Suppose we eliminate
the employee, and assume a case in which the carrier has
no servants, and himself does the work of carriage; should
he assault and wound a passenger in the manner suggested
by the instruction, it is undeniable that if sued as an indi-
vidual he would be held free from responsibility, and the
act adjudged lawful. Can it be that if sued as a carrier
for the same act a different rule obtains, and he be held
liable? Has he broken his contract of carriage by an act
which is lawful in itself, and which as an individual he
was justified in doing? The question carries its own an-
swer; and it may be generally affirmed that if an act of an
employee be lawful, and one which he is justified in doing,
and which casts no personal responsibility upon him, no re-
sponsibility attaches to the employer therefor."

See, also, Wharton, Negligence, § 157.

So, too, from the principle that there can be no liability
on the part of an employer for the act of his employee in
which he took no part, if the employer is free from liability,
it follows that a judgment in favor of the employee in an
action brought against him for an injury caused by such
an act is a bar to a recovery against the employer in an
action brought against him for the same cause of action.
And it has been held that an employer can avail himself of

a judgment in favor of his employee, when subsequently sued, without calling on the party primarily liable to come in and plead the judgment for him. In the case of *Emma Silver Mining Co. (Limited) v. Emma Silver Mining Co. of New York,* 7 Fed. 401, the rule was announced as follows:

"The weight of authority, however, is that where an agent in a transaction is sued after the termination of his agency, and upon a trial of the merits the issue is determined against the plaintiff, the principal, though not a party to the suit, can avail himself of the judgment as a bar, when he is sued by the same plaintiff on the same cause of action. While the principal, if he had no notice of the former suit, and no opportunity to defend it, may not be concluded by a judgment against his former agent, or made responsible for the agent's bad pleading or blunders in the trial of the cause, because so to conclude him would be to deprive him of his property without due process of law, yet, as regards the plaintiff who has before sued the agent and been defeated, there is no reason why he should not be concluded upon that principle of public policy which gives every man one opportunity to prove his case, and limits every man to one such opportunity. He has had his day in court, and it is immaterial whether he has chosen to test his right as against the principle or the agent in the transaction, provided the issue to be tried was identical as against both."

In *Hill v. Bain,* 15 R. I. 75 (23 Atl. 44, 2 Am. St. Rep. 873), the action was for personal injuries received by plaintiff while driving on a highway, caused by coming into collision with an obstruction left in the highway by two persons named Budlong. The defendant pleaded in bar of the action a judgment in favor of the Budlongs, rendered on the verdict of a jury in an action brought by the plaintiff against them for the injury complained of, alleging that the Budlongs were the authors of the obstruction or defect. On demurrer this was held a good plea by way of estoppel.

The court, after citing and reviewing a number of cases, said:

"We think, on the authority of these cases, it is competent for the defendant town to set up, by way of estoppel in the case at bar, the judgment recovered by the Budlongs. Certainly, if the town had notified the Budlongs of the pendency of this action, and the Budlongs had, in consequence of the notice, assumed the defence, it would be competent for them, on the authority of these cases, to plead the former judgment in bar; for they would then be the real defendants, though defending in the name of the town, and ought not to be required to try over a question which they have already tried, with the result of a final judgment against the plaintiff in their favor. But the Budlongs, if they assumed the defence, would have to make it in the name of the town, and we see no good reason why the town should not be permitted to make, without calling upon them, any defence which they could make, if called upon, in the name of the town."

In *Featherston v. N. & C. Turnpike*, 71 Hun, 109, the facts were similar to the case last cited. There it was said:

"The statement in the answer shows that Shafer was the wrongdoer, and that his act was the cause of the injury sustained by the plaintiff. So it seems to follow that if Shafer was not liable for creating and maintaining the obstruction, the defendant cannot be liable for the failure to remove them. If Shafer was not liable because the plaintiff's own negligence produced the injuries of which she complains, the defendant is not liable for the same reason. Shafer and the defendant were not joint wrongdoers, and the rule that one wrongdoer cannot recover against, or compel contribution by another, does not apply. The relation between Shafer and the defendant was analogous to that of principal and agent, or principal and surety, or master and servant, and the rule in such cases is that a judgment in favor of the principal or the surety upon a ground equally applicable to both, should be accepted as conclusive against the plaintiff's right of action. (Herman

on Estoppels, 169; *Castle v. Noyes,* 14 N. Y. 329.) * *
* * * Under this rule of law, the turnpike company
would be entitled to recover from Shafer any amount the
plaintiff might recover against it. Such right would rest
upon the principles of subrogation. The turnpike com-
pany would be entitled to be subrogated to plaintiff's right
of action against Shafer, but the judgment on the merits
in Shafer's favor in the plaintiff's suit against him, relieves
him of all liability to the plaintiff, or any person claiming
under her, for the same cause of action. The plaintiff,
therefore, by being barred by the judgment in Shafer's
favor, is equally barred from any action against the com-
pany under the rule that whatever discharges the principal
discharges the surety. As she had no cause of action against
Shafer, she can have no cause of action against the defend-
ant, and, therefore, the portion of the answer to which the
demurrer relates does set up, in our judgment, a valid de-
fense to the action, and the order appealed from should be
reversed."

In *King v. Chase,* 15 N. H. 9 (41 Am. Dec. 675), it was
held that a judgment in favor of a deputy sheriff is conclu-
sive evidence for the sheriff in a subsequent action, where
both actions are for the seizure of the same goods. In
*Emery v. Fowler,* 39 Me. 326 (63 Am. Dec. 627), it was
held that a judgment in favor of a master in an action
against him for the act of his servant, rendered in a trial of
the action on the merits, is a bar to an action against the
servant for the same act. In that case the court said:

"To permit a person to commence an action against the
principal and to prove the acts alleged to be trespasses, to
have been committed by his servant acting by his order, and
to fail upon the merits to recover, and subsequently to
commence an action against that servant and to prove and
rely upon the same acts as a trespass, is to allow him to have
two trials for the same cause of action, to be proved by the
same testimony. In such cases the technical rule, that a
judgment can only be admitted between the parties to the
record or their privies, expands so far as to admit it, when

the same question has been decided and judgment rendered between parties responsible for the acts of others. A familiar example is presented in suits against a sheriff or his deputy, which being determined upon the merits against or in favor of one, will be conclusive upon the other."

See, also, *Atkinson v. White,* 60 Me. 396; *Spencer v. Dearth,* 43 Vt. 98; *Glaze v. Citizens' National Bank,* 116 Ind. 492 (18 N. E. 450); *Williams v. McGrade,* 13 Minn. 46; *Inhabitants of Lower Alloways Creek v. Moore,* 15 N. J. Law, 146; *Chicago & Rock Island R. R. Co. v. Hutchins,* 34 Ill. 108, 111; 2 Van Fleet, Former Adjudication, § 572.

From these considerations it is clear that the trial court erred in entering judgment against the appellant after it had entered judgment in favor of the defendant Root. It becomes important, therefore, to inquire what disposition shall be made of the case by this court. Were the judgment against Root void, or were it before us for review on this appeal, or on a separate appeal by the present respondent, we would have no hesitancy in reversing both judgments and remanding the cause for a retrial on the whole of the issues. But the judgment in favor of Root is not void. True, the verdict of the jury was silent as to him, and it may be that the rule that silence of the verdict as to one of the defendants is a finding in favor of that defendant, is not strictly applicable to this class of cases; yet the action of the trial court in construing the verdict as one in his favor, and entering judgment thereon, was at most error merely, rendering the judgment voidable, and subject to be vacated or reversed if seasonably attacked by some one or more of the methods pointed out by the Code for vacating or reversing erroneous judgments. Inasmuch, however, as it was not so attacked, so far from being void, it stands as a conclusive bar to a recovery against Root, not only in the present ac-

tion, but also in any action brought against him for the same cause of action. As against a collateral attack it is as conclusive as a judgment would be entered upon a verdict finding directly or in terms in his favor. Nor is the judgment before us for review. This is true no matter what view we may take of the judgments entered by the trial court; that is, whether we consider them as separate judgments, or, taken together, as constituting but one judgment. Under the statutes of this state a party aggrieved may appeal from a part only of a judgment entered against him in an action not triable *de novo* in this court (Ballinger's Code, §§ 6500, 6503, 6521); hence, if the judgments are in law but one judgment this appeal brings before us only that part of it which affects the appellant. We can, therefore, neither reverse nor ignore the judgment in favor of Root, and are powerless to order a retrial of the issues as between him and the respondent.

This being so, there can be no retrial of the issues between the respondent and the appellant. We are aware that the principle of the cases above cited, in so far as they permitted the party secondarily liable to plead directly in estoppel a judgment in favor of his principal on the same cause of action, have been criticised as controverting the rule that estoppels, to be binding, must be mutual. See, particularly, Mr. Freeman's note to *Hill v. Bain,* 2 Am. St. Rep. 873, 876. But, if we were to accept this criticism as just, it can have no application to a case presenting the conditions shown by the record before us. Here the judgment constituting the bar to a recovery was entered in the action then being tried by the court. Certainly there is no rule of law which requires that such a judgment should either be pleaded or proved in order to make it available to all of the defendants against whom or in favor of whom it operates. The contrary view would imply that the court could

not judicially notice its orders and judgments entered in the very cause before it.

We have not overlooked the contention made by the respondent to the effect that the appellant cannot avail itself of the judgment in favor of Root because it did not except to the construction put by the court upon the verdict of the jury. This was not, however, a duty which devolved on the appellant. It was the respondent who was adversely affected by that construction, and, inasmuch as he consented thereto, he must abide by all the consequences which such construction entails.

We conclude, therefore, that the judgment appealed from must be reversed, and the cause remanded with instructions to enter a judgment for the appellant in accordance with the prayer of its answer; and it is so ordered.

DUNBAR, C. J., and ANDERS and REAVIS, JJ., concur.