[No. 13239. Department One. July 11, 1916.]

MARY A. PARMELEE, *as Administratrix etc., Appellant*, v. CHICAGO, MILWAUKEE & ST. PAUL RAILWAY COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—PROXIMATE CAUSE OF DEATH—EVIDENCE—SUFFICIENCY. The negligence of a railroad company in nailing boards over the feed holes in the top of a stock car so as to cause an obstruction, is not shown to be the proximate cause of the death of a brakeman who fell while walking on top of the car, but the same is left to speculation and conjecture, where no witness saw the accident, and it was merely proven that it was usual for brakemen to pass over the feed hole, that his lantern was seen to swing violently and disappear at about the time he would have reached the feed hole after boarding the car, and a witness thought he heard a stumble, and the deceased merely said "I fell off; I fell between."

Appeal from a judgment of the superior court for King county, Mackintosh, J., entered September 4, 1915, in favor of the defendant, notwithstanding the verdict of a jury rendered in favor of the plaintiff, in an action to recover for the death of a railway brakeman. Affirmed.

[1]Reported in 158 Pac. 977.

*Griffin & Griffin,* for appellant.

*Geo. W. Korte,* for respondent.

CHADWICK, J.—Appellant, as administratrix, brought this action to recover damages for the death of David Parmelee, who was killed while in the performance of his duties as brakeman in the employ of respondent. The immediate facts concerning the untoward event are as follows: Deceased reported for duty as swing brakeman on train No. 64 east, leaving Seattle at 10 o'clock p. m. July 5th, 1914. The crew consisted of Parker, conductor, Watson, head brakeman, Parmelee, swing brakeman, and Kidler, flagman. As made up in Seattle yards, the train consisted of an engine, one large automobile car, one stock car, and the caboose, in the order named.

At Black River Junction, a twenty-five minute run from Seattle, thirty-eight cars were switched into the train ahead of the automobile and stock car. No. 63 extra west pulled into the yards as No. 64 was being made up and, as the main line was blocked, had to remain there until the departure of No. 64. The crew of the west bound freight consisted of Andrews, conductor, Fetrow, head brakeman, Ward, rear brakeman, and Merriman, flagman. When train No. 64 started east, Fetrow and Parmelee were talking together on top of the automobile car. After the train had gone a short distance, Fetrow left Parmelee and stepped over onto a car on an adjoining side track. He testifies that the last he saw of Parmelee he was going toward the caboose. As the train passed Merriman, Parmelee, who was then standing in the middle of the stock car and looking toward the engine, called out: "Good night, Merry." Merriman is the last person who saw him before the accident. Shortly afterwards, and when the train had moved about four car lengths, Merriman heard the lantern fall, and called the attention of Fetrow, who was near, saying that he thought Parmelee had fallen. Upon investigation by

Fetrow, Parmelee was found lying between the side tracks. Fetrow testifies that Parmelee's only statements were: "I fell off; I fell between."

Appellant sought to prove that the stock car was in a defective condition in that one of the feed holes in the top of the car—the one on the rear left-hand side of the car—had been nailed over with boards; that one of the boards had been nailed over the hinge of the door of the feed hole so that there was a space of from one and one-half to two inches between the edge of the board and the roof of the car, the obstruction being on the side nearest the running board; that deceased had performed his duty on top of the train and was proceeding on his way to the caboose which was the next car in the rear, and in which he was accustomed to ride between stations; that it was usual for brakemen thus engaged and moving to pass diagonally across the corner of the roof; that deceased must have so passed, and in passing, tripped over the board which had been nailed over the hinge, and fell between the stock car and the caboose.

We have said no one saw decedent fall, and no one can say, with certainty, how the accident happened. The testimony to sustain the facts and circumstances relied upon may be summarized. The head brakeman said he rode in the cupola of the caboose from Seattle to Black River Junction; that, while passing by one or two electric lights, he noticed that the feed hole of the stock car had been boarded over. One witness says he saw decedent jump from the automobile car, which was about four feet higher than the stock car, and that after the lapse of about such time as it would take a man to go the length of the car, he saw his lantern jerk or swing and disappear. This witness was about six hundred feet away, fifteen car lengths. Another witness says he heard what he thought was a stumble. Another witness heard decedent's lantern crash upon the ground.

We have held that negligence may be proven by circumstantial evidence: *Sweeten v. Pacific Power & Light Co.,* 88 Wash. 679, 153 Pac. 1054; *Frescoln v. Puget Sound Traction, Light & Power Co.,* 90 Wash. 59, 155 Pac. 395. We have also held that proof of negligence does not have to be beyond a reasonable doubt. *Helland v. Bridenstine,* 55 Wash. 470, 104 Pac. 626; *St. Germain v. Potlatch Lumber & Shingle Co.,* 76 Wash. 102, 135 Pac. 804. But this court has never held, nor has any other that we are aware of, that the proof of the proximate cause could be left to conjecture or speculation. See *Weckter v. Great Northern R. Co.,* 54 Wash. 203, 102 Pac. 1053, and cases cited.

Negligence, being a fact to be proven, either by direct or circumstantial evidence, and not to be presumed upon conjecture or speculation (*Wilkie v. Chehalis County Logging & Timber Co.,* 55 Wash. 324, 104 Pac. 616; *Frescoln v. Puget Sound Traction, Light & Power Co., supra*), it is necessary to consider whether appellant has proved a case of negligence, or whether the cause of decedent's death rests in speculation and conjecture. If there be proof of probable cause, whether the injury resulted in consequence of the established cause may be left to reasonable inference. That is what is meant by reasonable inference from established facts. *Miller-Brent Lumber Co. v. Douglas,* 167 Ala. 286, 52 South. 414. In other words, there can be no inference of fact unless an antecedent fact or condition be proven by direct or circumstantial evidence. Inference follows certainty, and is the ultimate and compelling conclusion of the mind from established facts. No presumption of negligence arises from the mere fact that the deceased was found dead alongside of the track. This, counsel admits, and undertakes to prove a cause, an act of negligence.

Although denied by the other witnesses, one witness has sworn that boards had been nailed over the hinge on the feed hole so that a space was left between the roof of the car and the board. This would be a sufficient cause, but the

proof fails to bring deceased in contact with the alleged defect. It shows at best only a possibility. This court, in the case of *Whitehouse v. Bryant Lumber & Shingle Mill Co.,* 50 Wash. 563, 97 Pac. 751, has stated the governing principle. The court said:

"Conceding, for the purpose of the case, that there was testimony upon which the jury might have been warranted in finding negligence on the part of the respondent, there is no testimony upon which a jury could have based a conclusion that such negligence was the proximate cause of the injury, not because there was no eyewitness to the accident, since it is undoubtedly the established law that the proximate cause may be shown by direct evidence or it may be adduced as an inference from other facts proven, but because no legitimate inference can be drawn that an accident happened in a certain way by simply showing that it might have happened in that way, and without further showing that it could not reasonably have happened in any other way."

The case of *Corcoran v. Boston & Albany R. Co.,* 133 Mass. 507, seems to be in point. In that case, it was contended that the deceased, who was a brakeman, was killed by being knocked from a ladder on the side of the car upon which it was his duty to go while the train was passing through a cut, by an accumulation of ice and snow which the defendant had negligently suffered to be there.

"While the train was going through the cut, at the rate of fifteen miles an hour, the intestate was seen to go down from the top of a house car to a platform car to set the brake on that car, and this was the last seen of him alive. The brake on the platform car was afterwards found to be set. His next duty was to ascend a ladder on the side of a house car, in the rear of the platform car, to set the brake on that car. His lighted lantern was seen on the top of this car, and the lantern was afterwards found there.

"The train of cars was moving towards the east, and the greater part of the intestate's dead body was found a quarter of a mile to the eastward of the center of the cut. An impression was found in the snow by the side of the track just

east of the place where the ice on the side of the cut came nearest to the track, indicating that something heavy had fallen there."

The court disposed of the case, saying:

"The burden of proof is upon the plaintiff to show that her intestate was using due care when the accident happened. . . . It is impossible to tell from the evidence how the intestate fell from the cars, what he was doing at the time, . . . These questions are left to conjecture. The evidence would not justify the jury in finding that the plaintiff had sustained the burden of proof which was upon her as to these points, and the superior court therefore rightly directed a verdict for the defendant."

The supreme court of Iowa, in *Wheelan v. Chicago, M. & St. P. R. Co.*, 85 Iowa 167-175, 52 N. W. 119, quotes from other cases as follows:

"In *Asbach v. Chicago, B. & Q. Railway Co.*, 74 Iowa 250, it is said: 'A theory cannot be said to be established by circumstantial evidence, even in a civil action, unless the facts relied upon are of such a nature, and so related to each other, that it is the only conclusion that can fairly or reasonably be drawn from them. It is not sufficient that they be consistent merely with that theory, for that may be true, and yet they may have no tendency to prove the theory. This is the well settled rule.' It seems to us that we may reasonably draw other conclusions as to the cause of this injury from the facts in evidence than those contended for by the plaintiff. 'Verdicts must have evidence to support them, and must not be founded on mere theory or supposition.' *Bothwell v. C., M. & St. P. Railway Co.*, 59 Iowa 194. A jury will not be permitted merely to conjecture how the accident occurred. *Cumberland & P. R. Co. v. State* (Md.), 20 Atl. Rep. 785. And it is said that 'in matters of proof we are not justified in inferring from mere possibilities the existence of facts.' *Baltimore & O. R. Co. v. State* (Md.), 18 Atl. Rep. 971."

In discussing the rules of circumstantial evidence, Mr. Labatt, §§ 1602, 1603, 1604, says that a recovery cannot be had where the plaintiff's evidence is equally consistent

with the absence as with the existence of negligence, and that the establishment of a juridical connection between the master's negligence and the injury being one of the essential prerequisites to the maintenance of the action, the burden of proving that there was such a connection rests on the plaintiff; that the action cannot be maintained if, after all the testimony is put in, it remains doubtful whether the injury resulted from the cause suggested by the master or the cause suggested by the servant. If there is nothing more tangible to proceed upon than two or more conjectural theories, it is immaterial that the theories suggested in the interest of the servant is more probable than that suggested in the interest of the master, so that the rule is laid down:

"If the existing state of affairs, however dangerous, might, according to the ordinary experience of mankind, have been due to other causes than negligence for which the defendant was responsible, then it was for the plaintiff to exclude the operation of those causes by the greater weight of evidence." *Brooks v. Kinsley Iron & Machine Co.,* 202 Mass. 228, 231, 88 N. E. 771.

This would seem to imply that, in determining the weight of the evidence, and whether the case should have been submitted to the jury, the court might properly take into consideration the several circumstances as testified to by the witnesses for both parties.

In addition to the alleged defect, plaintiff relies upon the fact that Parmelee had about time to reach the back of the car; that the lantern seemed to be jerked or swung violently; that there were two parallel marks on the shoe of plaintiff just in front of the point where the shoe laces begin. On the other hand, the testimony shows that the deceased was an experienced brakeman; that he had on a new pair of shoes; that he appreciated the danger of wearing new shoes, and stated to one of his coemployees that he intended to change them; that he was standing in the middle of the car, facing toward the engine when last seen; that if he had

tripped over the board he would have fallen clear of the cars
and not between them; that it was a rule of the company
that brakemen should remain on top of the cars until clear
of the yards; that there is a presumption that he knew and
was keeping the rule; that the stock car had been tested by
a car inspector before it went out on the run, and had been
passed as being in good order; that the car had been ex-
amined at a way station about half past seven in the morn-
ing following by some of the trainmen, who testified that
there were no boards nailed over the feed hole; that it was
examined at Cle Elum after the run had been completed,
by the engineer, fireman, and station agent, and that the
feed hole was the same as the other feed holes in the car.
One witness testified that he found no boards nailed over,
and no nail heads or anything of that kind. Some of the
train crew testified, also, that on the end of the automobile
car next to the stock car there was a coating of dust and
grease, and that there were marks which, in the opinion of
the witnesses, were made by the gloved fingers of some one
who might have fallen between the cars. Deceased had a
glove on when found.

We think, measuring all the circumstances, and the fact
that the occupation of the deceased was, at best, highly haz-
ardous, and that it is "a matter of common knowledge that
trainmen come to their death every day by slipping and fall-
ing from cars" (*Weckter v. Great Northern R. Co., supra*),
that no such certainty of causation has been proven, either
by direct or circumstantial evidence, as would warrant us in
reversing the decision of the trial judge. It is just as pos-
sible that deceased came to his death by some cause other
than the negligence of the respondent as that he came to
his death through such negligence. Possibility cannot be
pyramided on possibility to make a chain of evidentiary cir-
cumstances. It is not a possible theory, but inference from
facts reasonably ascertained, which impels. It is that con-
clusion to which the mind will inevitably return when it

weighs the circumstances for either side, and will say, not arbitrarily, but as a result of due deliberation and a measuring of all the facts, that the proximate cause of the accident is to be found in the negligent conduct of the party charged.

This is but another statement of the primary rule of circumstantial evidence; that is, that not only should the circumstances all concur to show that the thing charged happened in a particular way, but that they are inconsistent with any other rational conclusion. All accidents are not the results of negligence. 29 Cyc. 589. In *Chilberg v. Colcock*, 80 Wash. 392, 141 Pac. 888, it was contended that the defendants had negligently installed gasoline tanks in a launch. An explosion occurred. There was no direct evidence. In holding that a showing that an accident might have happened in a particular way did not meet the rule of circumstantial evidence, the court quoted from *Hansen v. Seattle Lumber Co.*, 31 Wash. 604, 72 Pac. 457:

"But there must be some evidence, either direct or circumstantial, that there was negligence on the one side, an injury resulting in damages on the other, and that the injury and damages followed the negligence, and were produced thereby . . . it is not proving his case by circumstantial evidence for the respondent to show that there were causes, for which the appellant would be liable, which could have produced the injury, without showing that it could not have been produced in any other manner, or in any manner for which the appellant would not be liable;"

saying:

"So in this case, it was necessary for the appellant to show, either by positive evidence that the gasoline escaped from this particular fitting, or that the gasoline could not have escaped from some cause for which the respondents would not be liable. It is possible, of course, in this case, that the gasoline escaped from this particular fitting. But it is just as possible that the gasoline escaped from some other cause, and that the explosion was the result thereof, and not of gasoline which escaped from this particular fit-

7—92 WASH.

ting; because it is not shown that any gasoline actually escaped from this particular fitting, or that it could escape. The evidence shows that it might have escaped from this fitting, but that is as far as it goes. We are satisfied, therefore, that the court properly refused a recovery on the part of the appellant."

To hold with appellant, we would have to say that, inasmuch as she has shown a possible way for the accident to have happened, it became the duty of the respondent to show, by direct affirmative evidence, that deceased lost his balance and fell, or missed his hold on the grab iron, or stumbled over the running board, the edge of which was about three inches above the roof, or many other possibilities that might be suggested. It is because such proofs are generally impossible that the rule is declared that, in all cases where no witnesses saw the accident, the burden is on the plaintiff and continues throughout the trial. *Powers v. Pere Marquette R. Co.*, 143 Mich. 379, 106 N. W. 1117.

We will infer a consequence from an established circumstance. We will not infer a circumstance when no more than a possibility is shown.

Affirmed.

MORRIS, C. J., MOUNT, and ELLIS, JJ., concur.