[No. 15044.  Department One.  January 6, 1919.]

J. W. PRALL, *Administrator etc., Appellant,* v. GREAT NORTHERN RAILWAY COMPANY, *Respondent.*[1]

MASTER AND SERVANT (55, 155)—INJURIES—OPERATION OF RAILROADS—IMPUTED NEGLIGENCE—CONTRIBUTORY NEGLIGENCE.  Negligence cannot be imputed in the sending of a brakeman back to protect the rear of a train from the fact that trains were expected from both directions; and the statement to him that the west-bound train might be the first to arrive did not warrant him in failing to protect himself against trains coming from the other direction.

SAME (192)—INJURIES—EVIDENCE—CAUSE OF DEATH—CONJECTURE.  No recovery can be had for the death of a brakeman, sent back to protect the rear of a train, trains being expected from both directions, where there was no eyewitness to the accident and the cause of the death was left entirely to speculation and conjecture.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered June 17, 1918, upon granting a nonsuit, dismissing an action to recover for the death of a railway brakeman.  Affirmed.

*E. M. Heyburn,* for appellant.

*F. V. Brown* and *Thomas Balmer,* for respondent.

MACKINTOSH, J.—On the night of December 15, 1916, three west-bound trains and two east-bound trains, all

[1]Reported in 177 Pac. 637.

operated by the respondent company, and all of them at the time more or less late and off their schedules, were to meet at the station at Libby, Montana. The deceased, William Shearer, was rear brakeman on one of the three west-bound trains. His train was to take the side track at Libby, behind a freight train which had been preceding it, and there await the arrival of the two east-bound trains, and after their departure, to proceed west. Arriving at the side track, it was found that, after accommodating the preceding freight train, the side track was not sufficiently long to hold Shearer's train in its entirety, and the major portion of the train remained standing on the main track after the head of the train had gone in on the side track. Under these circumstances it became necessary to send out the rear brakeman as a flagman to protect the rear of the train from collision. When sending Shearer out to perform this duty, his conductor called his attention to the fact that No. 3, being the west-bound train following Shearer's train, would possibly be the next train along; the testimony on this point being as follows:

"Q. Did you say anything to Shearer when you ordered him out, except to order him out? A. No, I told him to go back to flag, to protect the rear end, and I told him possibly No. 3 would be the first thing along. . . . Q. You did not know whether or not No. 3 was following you when you sent Shearer back? A. Oh, I knew they were somewhere around behind me. Q. But you did not know whether they were following you up or not? A. Oh, they could not be very close. They could not get by the time I had on them. Q. You did tell Shearer to look out for No. 3, didn't you? A. Yes, I told him."

After waiting at Libby some time, the two east-bound trains arrived, and as soon as the second of them had passed the west switch, the freight on the

side track ahead of Shearer's train moved out and Shearer's train moved into the clear on the side track, thus opening the main track to the two east-bound trains, and they passed on. The engineer of Shearer's train then signalled for Shearer to come in, and after waiting a reasonable time, during which No. 3 came in and passed on west ahead of Shearer's train, and Shearer having put in no appearance, the conductor started out to look for him, and about one and one-quarter miles east of the station, discovered a broken lantern and some exploded torpedoes. He proceeded a mile further and found nothing more; the next morning were found other fragments of lantern and torpedoes and Shearer's cap, in the same vicinity in which the conductor had found the lantern and torpedoes the night before, and two miles farther east, was picked up one of Shearer's arms, and at the next station, some six miles east of Libby, his body was discovered cut in pieces. At the close of the plaintiff's case, which developed the evidence as above recited, a nonsuit was granted.

Appellant claims that negligence can be imputed to the respondent in sending Shearer out to protect the rear of the train, but this cannot be. Quite the contrary would be the fact. With the rear end of the train standing on the main track, it would have been negligence and in direct violation of the rules of the company not to have sent out the rear brakeman to flag any oncoming trains. It is the custom and rule of the railroads to protect all trains stopping on the main track, by invariably placing flagmen at suitable distances, both in the rear and in front. This protection is called for without reference to any special circumstances and without any exceptions. Shearer was sent out to protect the train, not only against No. 3,

but against all trains, and the statement to him by the conductor that possibly No. 3 might be the first train along was no assurance to him, nor did it warrant him in not protecting himself, against any other trains that might come from either direction. It was not such a statement as entitled the deceased to rely thereon, and was not made as a part of the train's operation. His knowledge of the situation was the same as that possessed by the rest of the train crew, and neither he nor they were sure whether No. 3 or one of the east-bound trains would pass the flagging point first.

The presumption that the deceased was performing his duty with care and caution applies as well, in the absence of evidence to the contrary, to the defendant's other employees operating the trains, and can, therefore, assist the appellant's case in no way. One offsets the other, for the presumption in favor of the deceased cannot lead to an inference that the operators of the train which struck him were negligent. *Looney v. Metropolitan R. Co.*, 200 U. S. 480; *Yarnell v. Kansas City, Ft. S. & M. R. Co.*, 113 Mo. 570, 21 S. W. 1, 18 L. R. A. 599.

The truth in regard to this unfortunate circumstance is that William Shearer was sent out to flag, which was part of his regular duties, and when the necessity for his continued performance of that duty had ceased he was called in, but never responded, and the reason for this is not known to any human being. The liability of the respondent cannot rest upon a conjecture. The appellant realized in drawing the complaint that the cause of Shearer's death is shrouded in mystery, for the charging part of the complaint reads as follows:

"Plaintiff believes from all the circumstances surrounding the accident to which there were no eye wit-

nesses, that the death of William Shearer was caused by acts and omissions of carelessness and negligence on the part of one or more of defendant's officers, agents and employes and that such acts and omissions constitute a just demand on the part of this plaintiff that the defendant make full explanation of the accident and in the absence of such explanation as a matter of defense, plaintiff alleges and reaffirms that William Shearer was killed through the negligence of defendant.''

The proof was no more definite than this allegation, and was not such as to take the case out of the operation of the rule announced in *Parmelee v. Chicago, Milwaukee & St. Paul R. Co.*, 92 Wash. 185, 158 Pac. 977, where the cases relied upon by the appellant are discussed and distinguished.

Judgment affirmed.

MAIN, C. J., MITCHELL, TOLMAN, and CHADWICK, JJ., concur.