[No. 17891. Department Two.  October 2, 1923.]

EFFIE B. ARMACK, *as Administratrix of the Estate of Fred W. Armack, Deceased, Respondent,* v. GREAT NORTHERN RAILWAY COMPANY, *Appellant,* MARTIN STADUM, *Defendant.*[1]

MASTER AND SERVANT (54, 92)—SIGNALS AND WARNINGS—ASSUMPTION OF RISKS—OPERATION OF RAILROADS. A machinist, absorbed in the performance of his duties on the side of an engine which was being drawn through a narrow doorway, did not assume the open and apparent danger of being caught and pinched in the doorway, where the nature of his work was such as to require all his attention and prevented him from guarding against the danger.

SAME (97)—ASSUMPTION OF RISKS—NEGLIGENCE OF FELLOW SERVANTS—STATUTES. A machinist, absorbed in the performance of his duties on the side of an engine which was being drawn through a narrow doorway, did not assume the risk of the negligence of a fellow servant whose duty it was to give a signal controlling the movement of the car or warning him of the danger.

DEATH (25)—EVIDENCE—WEIGHT AND SUFFICIENCY—CAUSE OF DEATH. In an action for the death of a machinist, caught between

[1]Reported in 219 Pac. 52.

the side of a car and the wall in a narrow doorway, it is only necessary to prove negligence and the proximate cause by a chain of circumstances from which the ultimate fact to be established is reasonably and naturally inferable.

Trial (134)—Verdict—Construction and Operation—Joint Tort Feasors—Verdict in Favor of One Defendant—Effect. In an action against a railroad company and its foreman for causing the death of a machinist, the fact that the foreman was exonerated by the jury does not establish that it was because of the contributory negligence of the decedent, where the foreman was not present at the time of the accident and another employee was shown to have been charged with the duties charged in the complaint against the foreman.

Same (134). In an action against a railroad company and its foreman for causing the death of a machinist, the jury's exoneration of the foreman does not entitle the company to a verdict where the liability of the company is shown other than through the acts of the foreman.

Master and Servant (103)—Assumption of Risks—Continuing Work with Knowledge of Danger. A servant does not assume the risks by failing to quit work immediately upon discovering a danger, nor until the lapse of a reasonable time for its removal.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered October 20, 1922, upon the verdict of a jury rendered in favor of the plaintiff, in an action for wrongful death. Affirmed.

*Thomas Balmer* and *Edwin C. Matthias,* for appellant.

*James McCabe* and *Donworth, Todd & Higgins* (*Hyman Zettler,* of counsel), for respondent.

Pemberton, J.—This is an action of respondent, the administratrix of the estate of Fred W. Armack, as representative of Effie B. Armack, the widow of Mr. Armack, for the death of her deceased husband. It is admitted that it is immaterial whether the action be considered under the Federal Employer's Liability Act, or under § 19, ch. 28, p. 96, of the Laws of 1917 of the state of Washington. [See Rem. Comp. Stat.,

§ 7693.] The deceased left no minor children and Mrs. Armack is the only dependent entitled to damages, if any, in this case.

The action was commenced and prosecuted against appellant and Martin Stadum, a foreman of the appellant's shops at Everett, Washington, in which the accident occurred resulting in the death of Mr. Armack. Mr. Armack was a machinist, fifty years of age, and for the last seven years had worked in the shop in which he received his fatal injuries. At the time of the accident, he was engaged in taking the valve travel measurements on the left hand side of engine number 1909 while it was in backward motion. The engine was being pulled by means of a cable, operated by an electric motor at a speed of about two miles an hour, through a doorway in which there was a space of eight inches between the door jamb and the left low pressure cylinder located on the front of the engine at the left side. There was, also, a cupboard standing near the door, even with the door jamb, the same distance from the engine. The deceased had apparently gone past the door jamb and in some manner had been caught between the cupboard and the low pressure cylinder, resulting in the injuries from which he died.

It is the contention of appellant that "the deceased was injured as the result of one of the open and apparent risks of his employment, the danger of which he assumed." Appellant presents the following authorities in support of its contention that "a servant assumes all the ordinary risks of service and all the extraordinary risks that are due to the master's negligence which he knows, and the dangers of which he appreciates." *Lundgren v. Pacific Coast Steamship Co.*, 103 Wash. 81, 173 Pac. 1023; *Engirbritson v. Tri-State Cedar Co.*, 91 Wash. 279, 157 Pac. 677; *Kelly v. Cowan*, 49 Wash. 606, 96 Pac. 152; *Waterman v.*

*Skokomish Timber Co.,* 65 Wash. 234, 118 Pac. 36; *Sainis v. Northern Pac. R. Co.,* 87 Wash. 18, 151 Pac. 93; *Southern Pac. Co. v. Berkshire,* 254 U. S. 415; *Seaboard Air Line Co. v. Horton,* 233 U. S. 492; *Chesapeake & O. R. Co. v. Proffitt,* 241 U. S. 462.

Appellant further insists that the only evidence to predicate a charge of negligence upon is the fact that deceased was caught between the engine and cupboard, and this arrangement of the shop was not negligent under the rule in the case of *Jennings v. Tacoma R. & Motor Co.,* 7 Wash. 275, 34 Pac. 937, wherein we said:

". . . we fail to find anything that indicates negligence on the part of the defendant. The plan of its power house may not have been the best that could have been devised; but it was the plan which they saw fit to adopt, and so long as it could mislead no one, and there were no lurking hidden dangers, but everything about it was open and transparent [apparent], they had a right to adopt it.

"It is contended by the respondent that the company ought to have notified him of this danger. We think the company had a right to presume that no caution was necessary to a person of ordinary prudence and intelligence; that it is not a reasonable supposition that any man of ordinary size will attempt to force himself through a space three and one-half inches in width between a moving car and a brick wall."

The conductor in this case was pushing a car through a doorway and neglected to protect himself by holding on after the car came to a wall within two and one-half or three inches of the wall, and we said:

"The company had a right to suppose that the smallest imaginable modicum of prudence would suggest to the man to let go when he came to the wall. . . . he simply did not notice what he was doing, we are forced to conclude that he was guilty of gross negligence, and that it would be inequitable to hold his

employers responsible for his heedlessness and negligent acts.''

The conductor did not have his attention called closely to some technical work preventing him from giving his personal attention to his protection.

It is the contention of respondent that, since the deceased was killed while working for the appellant railroad company, the method and place of performance having been determined and controlled by the railroad company, and being a task that absorbed the entire attention of the deceased, and being injured as the result of the carelessness of one of his fellow workmen, respondent is entitled to recover.

The deceased was a man of over two hundred and fifty pounds, with a waist line of thirty-five inches, and a through measurement of twenty-two inches, and was drawn into a space eight inches wide, resulting in his death. It is the contention of the railroad company that deceased knew all about the danger, and therefore assumed the same. It may be conceded that the deceased knew that the eight-inch space was insufficient to allow him to pass through between the door jamb and the engine, but the nature of the work was such in requiring all of his attention that it prevented him from guarding against this danger. A man was stationed near the engine whose duty it was to give signals directing its movements. It is the contention of respondent that the deceased had a right to assume that the man directing the movement of the engine would perform his duty or at least give the signal of warning so as to protect the deceased from walking into the danger.

In the case of *Cules v. Northern Pac. R. Co.*, 105 Wash. 281, 177 Pac. 830, we held that an employee does not assume the risk of negligence on the part of his fellow workman, as follows:

"Undoubtedly this section leaves open to the employer the defense of assumption of risk in all cases in which the defense is applicable, . . . But plainly this cannot avail the respondent in the present case unless it is to be held that an employee assumes the risk of negligence on the part of his co-employees. Such, however, is not the general rule. The courts, with almost entire unanimity, hold that an employee does not assume the risk of negligence on the part of his fellow employee. An exception is made in some of the courts, particularly the Federal courts, where the negligence of the fellow employee is habitual or usual and the injured employee knew, or by reasonable diligence ought to have known, of the negligence. But even this modification is not available as a defense in this action. As we have indicated, the evidence before us fails to show that the negligent act causing the injury was habitual or usual."

See, also, *Archibald v. Northern Pac. R. Co.*, 108 Wash. 97, 183 Pac. 95; *Stone v. Sylliaasen*, 70 Wash. 89, 126 Pac. 84.

The rule is stated in Thompson on Negligence, vol. 2, § 1756, as follows:

"They (car repairers, etc.) are not only lawfully upon the railway track and hence in a position of danger, but they are there under contract with the railway company for the performance of certain duties which require, to a greater or less extent, the exercise of their faculties, in the performance of which their faculties may become so absorbed as not to enable them to take the same care for their safety which might reasonably be expected from travelers at crossings and from intruders upon railway tracks or in railway yards. These considerations impose upon the railway company, with peculiar force, the duty of giving them warning upon the approach of a train or engine, by the use of audible signals; and by checking or stopping the train or engine in time to avoid injuring them, if the engineer perceives that, for any reason, they are not paying attention to those signals. Such a person can not keep his eyes on his work and, at the same

time, keep them strained in both directions for approaching trains, or for ocular signals. Such persons are, therefore, not blameworthy, as matter of law, merely because they become so engrossed in their work as not to heed the approach of a train, or because they rely upon the reasonable expectation that the railway company will, through its trainmen, perform the duty of giving them the necessary and proper signals.''

It is also contended by appellant that ''respondent did not prove that Mr. Armack's injuries were caused by any negligence on the part of appellant'' and that the deceased may not have been engaged in his work at the time of the accident, and the proximate cause of the accident was not shown, relying on the following cases: *Patrick v. Spokane & Eastern R. & Power Co.,* 117 Wash. 317, 201 Pac. 23; *Parmelee v. Chicago, M. & St. P. R. Co.,* 92 Wash. 185, 158 Pac. 977; *Whitehouse v. Bryant Lum. etc. Co.,* 50 Wash. 563, 97 Pac. 751; *Prall v. Great Northern R. Co.,* 105 Wash. 24, 177 Pac. 637.

It is admitted that the deceased was engaged in this work just prior to the accident. We said in the case of *Helland v. Bridenstine,* 55 Wash. 470, 104 Pac. 626, that:

''The respondent was not required to prove her case beyond a reasonable doubt, nor by direct and positive evidence. It was only necessary that she show a chain of circumstances from which the ultimate fact required to be established is reasonably and naturally inferable.''

''A plaintiff in this character of case is not obligated to establish the material facts essential to a recovery beyond a reasonable doubt. Such a rule would amount to a denial of justice. It is sufficient if his evidence affords room for men of reasonable minds to conclude that there is a greater probability that the accident causing the injury happened in such a way as to fix liability upon the person charged with such liability, than it is that it happened in a way for which the person so charged would not be liable. 'There are very

few things in human affairs, and especially in litigation involving damages, that can be established to such absolute certainty as to exclude the possibility, or even some probability, that another cause or reason may have been the true cause or reason for the damage, rather than the one alleged by the plaintiff. But such possibility or even probability, is not to be allowed to defeat the right of recovery, where the plaintiff has presented to the jury sufficient facts and circumstances surrounding the occurrence as to justify a reasonable juror in concluding that the thing charged was the prime and moving cause.' " *St. Germain v. Potlatch Lumber Co.*, 76 Wash. 102, 135 Pac. 804.

We must hold that, upon the facts in this case, the jury could reasonably find that, at the time of the accident, the deceased was engaged in the performance of his duties.

It is next contended by appellant that the verdict in favor of Mr. Stadum, the general foreman, may have been because of the contributory negligence of the decedent; and since contributory negligence as to the foreman necessarily includes assumption of risk as to the railroad, and the jury made a contradictory finding, the case against the railroad should be dismissed; and appellant also states that:

"Where a vice-principal is exonerated and the master held liable, and the master could be rendered liable only on the theory of *respondeat superior*, judgment against the master is erroneous when the verdict and judgment in the action exonerate the servant as being free from negligence. *Allen v. Walla Walla Valley R. Co.*, 96 Wash. 397, 165 Pac. 99; *Sipes v. Puget Sound Elec. R. Co.*, 54 Wash. 47, 102 Pac. 1057; *Morris v. Northwestern Improvement Co.*, 53 Wash. 451, 102 Pac. 402; *Stevick v. Northern Pac. R. Co.*, 39 Wash. 501, 81 Pac. 999; *Doremus v. Root*, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649."

There is nothing in the record to show that the jury exonerated the foreman because of the contributory

negligence of the decedent. The charge in the complaint is that the death was caused by the negligence of the appellant railway company, and its officers and employees. The foreman was not present at the time of the accident, and evidence was introduced showing that another one of the employees was the one whose particular duty it was to manage the movements of the engine in question. Under these facts, the jury may have found that the foreman was not personally responsible.

In the case of *Aldrich v. Inland Empire Tel. & Tel. Co.,* 62 Wash. 173, 113 Pac. 264, we held:

"It is next claimed that the verdict and judgment acquitting Warren precluded any judgment against the appellant, on the principle announced in *Doremus v. Root,* 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649. But here, again, we think the appellant has mistaken the evidence. Had the prosecution been instigated wholly by Warren, and were the appellant liable only because of the doctrine of *respondeat superior,* the analogy might be complete. But Warren did not act wholly on his own volition. The prosecution was at least sanctioned and counseled by the trustees of the company, if it was not directed by them. This evidence warranted a finding on the part of the jury against the company, although they found the president not liable."

If the liability of the master is shown other than through the misconduct of his servant, he may be held notwithstanding a verdict is rendered in favor of the servant. *Jones v. Seattle,* 51 Wash. 245, 98 Pac. 743; *Clay v. Chicago, M. & St. P. R. Co.,* 104 Minn. 1, 115 N. W. 949; *Loveman Co. v. Bayless,* 128 Tenn. 307, 160 S. W. 841, Ann. Cas. 1915C 187.

With respect to the contention of appellant that decedent should have quit work instantly upon ascertaining the danger, and therefore assumed the risk, we

find that, in the case of *Doyle v. Great Northern R. Co.*, 43 Wash. 558, 86 Pac. 861, we endorsed the following rule found in Shearman & Redfield on Negligence (5th ed.), § 211, as follows:

"If every man should cease from work upon the instant of discovering that his safety was imperiled by the negligence of some other person, the business world would come to a stand. If every servant on a railroad or in a factory should refuse to work by the side of a negligent fellow-servant or with defective materials, immediately upon becoming aware of the fact, such enterprises could never be carried on. Obviously, a reasonable time must be given for removal of the defect; and meantime, the business must be carried on with no prejudice to the servant's rights, unless the risk is so great that no one, acting with ordinary prudence, would go on under the circumstances."

There being no error, the judgment of the trial court is affirmed.

MAIN, C. J., PARKER, FULLERTON, and TOLMAN, JJ., concur.