'Argued September 19, decided October 7, 1913.

# OLSEN *v.* SILVERTON LUMBER CO.*

(135 Pac. 752.)

**Master and Servant—Injuries to Servant—Actions—Complaint—Sufficiency.**

1. A complaint which alleged that defendant engaged plaintiff to assist in removing logs from the place where they were cut to the roadway by a cable operated by an engine, that a wire running from the engine to a point in the immediate vicinity of the workmen was used by one member of the logging crew to signal the engineer to start and stop, that it was the duty of the defendant to provide a safe and suitable wire for such signals and a competent man for such service, that defendant provided a rotten and improperly repaired wire, so that it was liable to catch on bushes, that defendant failed to employ a competent man, and whereby plaintiff was injured when a log struck a tree and broke it, owing to the inability of the logging crew to give signals because the defective wire caught on a bush, is sufficient, in the absence of a demurrer or any motion to compel election or to make more definite and certain, to charge the defendant with negligence in furnishing appliances and in employing an incompetent signalman.

**Master and Servant — Injuries to Servant — Actions — Assumption of Risk—Pleading—Sufficiency.**

2. In a personal injury action by a servant, where the complaint charged the master with negligence in failing to furnish a suitable signal wire to the engineer who was hauling the logs, or to engage a competent signalman, an answer alleging that plaintiff was employed as a hook-tender, and that he was an experienced man, and realized all the dangers of his employment, and assumed all the risks incident thereto, and that the injury complained of was the result of one of the ordinary risks, does not set up the assumption of the risk arising out of the master's negligence in failing to furnish a suitable signal wire.

**Master and Servant—Injuries to Servant—Actions—Assumption of Risk—Pleading.**

3. Assumption of risk, like contributory negligence, is an affirmative defense which must be pleaded and proven by the master, consequently, in a personal injury action by a servant, where the negli-

---

*As to whether a servant may assume the risk of dangers created by the master's negligence, see notes in 4 L. R. A. (N. S.) 848 and 28 L. R. A. (N. S.) 1215.

On the question of the rights of a servant continuing work on master's promise to remove a specific cause of danger, see note in 40 L. R. A. 782; and for servant's assumption of risk of defect in simple tool which master has promised to repair or replace, see note in 27 L. R. A. (N. S.) 1052.        REPORTER.

gence relied upon was the failure of the master to furnish a suitable signal wire to be used in the master's business, the servant, without having pleaded the facts, may show that he informed the master's foreman of the condition of the wire, and the foreman promised to supply a new one, but failed.

[As to the doctrine of assumption of risk in the law of master and servant, see notes in 97 Am. St. Rep. 884; 98 Am. St. Rep. 289; and as to the effect of the employer's promise to repair, see note in 119 Am. St. Rep. 434.]

**Master and Servant—Injuries to Servant—Actions—Jury Questions.**

4. In a personal injury action, where the negligence relied on was the master's failure to furnish a suitable signal wire, and also his failure to furnish a competent signalman, the question of the signalman's incompetence was improperly submitted to the jury, where there was no evidence of his negligence, the whole evidence showing that the accident was caused by the defect in the signal wire.

**Master and Servant—Injuries to Servant—Safe Place to Work.**

5. An employer is required to use reasonable care and diligence to provide and maintain reasonably safe appliances, and to use like care and diligence in the selection of competent servants; but he is not an insurer in either case.

From Marion: PERCY R. KELLY, Judge.

Department 2. Statement by MR. CHIEF JUSTICE McBRIDE.

This is an action by Alfred Olsen against the Silverton Lumber Company, a corporation, to recover damages for personal injuries. The plaintiff was a hook-tender in defendant's logging camp near Silverton, and the circumstances of the injury are set forth in the complaint as follows:

"That in prosecuting said work at said logging camp of the defendant a donkey-engine was used, which on the 2d day of February, 1910, was stationed about 1,800 feet from where the logs were being brought from the timber where they were cut to said main roadway, and from said donkey-engine a wire cable was carried to a point near to where logs were to be brought to the main trail, where such cable passed through a block secured to a convenient tree or stump, and from such point the end of the cable was carried to a point where the same was attached

to a log to be pulled out to the main trail or logway. That there was also used in connection with such operation, and as a part thereof, and a part of said working plant, and necessary for the safety of defendant's workmen, a wire running from said donkey-engine to a point in the immediate vicinity of the workmen, and such wire at such terminal point was in charge of a workman, a member of said logging crew, whose duty it was by means of said wire to signal to the engineer in charge of said donkey-engine to stop the engine whenever during said logging operation it was necessary to stop the said donkey-engine from pulling on such wire cable attached to a log, and the means of giving such signal or warning to stop was for a workman to holler to the signalman at the end of the wire, and he in turn to signal the engineer to stop the donkey-engine from pulling on such wire cable. * * That it was the duty of the defendant to furnish and provide a safe and suitable wire, for the purpose of enabling signals to be given to said engineer, and an employee to operate said signal wire who was skillful, competent, careful and of proper age and discretion to perform such service. * * That said defendant carelessly and negligently failed to provide a safe and suitable wire for giving signals to the engineer in charge of said donkey-engine; but the said defendant carelessly and negligently provided a wire that was rotten and broken and improperly repaired, so as to allow the spliced portions to catch on limbs and brush along its course toward said donkey-engine, and the same was dangerous, and said defendant carelessly and negligently failed to employ a competent man to operate said signal wire, all of which will hereafter appear, and all of which the defendant well knew, but of which the plaintiff was ignorant. * * That on the said 2d day of February, 1910, the plaintiff, while in the employ of the defendant as hook-tender as above mentioned, and under the direction of said foreman, fastened the log hooks to a saw-log to be hauled to the main trail, and as it was his duty signaled for the

said donkey-engine to commence pulling said log, and as it was his duty followed along said log to see that the same properly got to the main trail, and to give warning to the signalman of any obstruction in the course of said logs. That after said saw-log commenced to move toward said main trail it was about to collide with a standing tree, and the plaintiff immediately gave warning to said signalman by hallowing; but said signalman negligently, carelessly and recklessly failed to give the signal to the engineer of said donkey-engine, and said engine did not stop pulling on said cable, and said saw-log was hurled with great force against said standing tree, causing the same to break in two pieces, one of which struck this plaintiff with great force, wounding and bruising this plaintiff, and breaking his left leg above the knee, and injuring the plaintiff's left ankle, and injuring the plaintiff's knee. That immediately after said injury the plaintiff was removed to his home nearby by defendant, and afterward taken to a hospital. * * That, by reason of the injuries caused by said carelessness and negligence of said defendant in not furnishing a safe, sound, and suitable signal wire and a safe, skillful, and competent, and careful signalman to operate the same, the plaintiff was compelled to and did remain confined in a hospital eight months."

The answer denied negligence, pleaded assumption of risk, and contributory negligence, and alleged that, if the negligence of any person other than plaintiff contributed to his injury, it was the negligence of the signal boy, who was a fellow-servant. The accident occurred prior to the passage of the employer's liability statute, and this is a common-law action for negligence.

Upon the trial the plaintiff, over the objection and exception of defendant, introduced evidence tending to show that the signal wire was old, rotten and broken; that it had been knotted or tied together; that after

the log had been attached to the cable, which by a revolving drum on the donkey-engine was the means of hauling it to its destination, he gave a signal to go ahead by one halloo; that the signal boy then gave one blast on the whistle of the engine by giving one jerk on the signal wire, which extended from the place where he stood for a distance of about 2,000 feet to where the engine was located; that, seeing the log was likely to strike the tree, the falling of which caused the injury, he signaled the boy by giving two halloos to stop the engine; that the boy attempted to give such signal by jerking the wire, but that a knot on the wire caught on a limb, and prevented it from moving, so that he was unable to give the signal, and the log, continuing to move rapidly, struck the tree with such force that it was broken down, falling on plaintiff, and causing the injury.   There was no evidence that the signal boy was negligent beyond the fact that the whistle was not sounded, and there was no evidence of his incompetence except the fact that he was at the time of the accident only of the age of 15½ years.

The plaintiff also introduced evidence tending to show that a day or two before the accident he had called the attention of defendant's foreman, who had general supervision of the camp, to the defective condition of the signal wire, and requested him to furnish a new one, which the foreman promised to do, but which he had not done at the time of the accident.   The evidence seemed to establish that by reasonable diligence defendant could have furnished the wire before the accident happened.   The testimony of plaintiff as to his conversation with Day is as follows:

"Q. What position was Mr. Day occupying with the Silverton Lumber Company?

"A. Foreman.

"Q. How often was he in the vicinity where you was working?

"A. Sometimes he would come up there every day; sometimes it would be a week; sometimes as much as two weeks.

"Q. At this particular time, how long before had he been there?

"A. He was there a day or two before I got hurt. I think the day before I got hurt.

"Q. Was this signal wire in proper repair at the time?

"A. No, sir; it was not.

"Q. Did you have any conversation with Mr. Day concerning it?

"A. Yes, I told Mr. Day—

"Mr. Senn: We object to that as incompetent, immaterial and irrelevant. No allegation in the pleadings; no complaint made to the foreman; no promise of repair made.

"Mr. Bingham: This evidence is for the purpose of showing knowledge.

"Court: I will overrule the objection, and give you an exception.

"Q. What was said to Mr. Day in regard to that?

"A. I told Mr. Day I wanted a new signal wire. He said he 'would send one up right away.'

"Q. Did you tell him why you wanted a new one?

"A. Yes, I told him the old wire wasn't safe for anyone to use. It had knots from one end to the other.

"Q. How long was this before you got hurt?

"A. A day or two before. He said he 'would send me some up right away,' is the words he said."

The court gave, among others, the following instructions, which were excepted to by defendant: "It was the duty of the defendant to provide a reasonably safe place for the plaintiff to work, having reference to the character of the work plaintiff was required to do. The defendant must also provide safe and suitable appliances and competent fellow-servants, and the risk was not in itself an assumed risk. The recovery, if

any, in this case in favor of the plaintiff must be limited and restricted to the alleged negligence set up in the complaint, that is, the alleged negligence in failing to provide a suitable wire, or the alleged negligence in failing to provide a competent person to operate the signal wire. It is a rule governing cases of this nature that plaintiff is limited and restricted to the acts of negligence upon which he sees fit to base his complaint. But, as I have said, it is the duty of the employer to provide reasonably safe appliances for his employees. It is also the duty of the employer to provide competent fellow-servants. The selection of a fellow-workman must be made with a view of the nature of the employment. If the work involves special knowledge or great care for the personal safety of others, or judgment or discretion, then a suitable person should be employed. This duty in selecting of fellow-servants is personal to the employer, and if delegated to a foreman the responsibility for proper care rests with the employer. If you find from the evidence that the person employed to give the signals was not of sufficient age and discretion to perform the duties required by him, and that the injury to plaintiff resulted in the failure to give the proper signal on account of inability to exercise proper judgment and discretion, and this was on account of the immature age of the person employed to give the signals, and there was no contributory negligence upon the part of the plaintiff himself directly contributing to the injury complained of, then you should find in favor of the plaintiff. There is a distinction between the duty which rests upon the employer to provide competent fellow-servants and the result of negligence of a fellow-servant contributing or causing an injury to a fellow-employee. It is a duty upon the part of the employer to provide competent fellow-servants. As I

have said before, the employer is not liable for injury which is the result of the negligence of a fellow-servant, if the employer has not himself been negligent by failing to provide proper and reasonable appliances for the protection and use of the fellow-employee injured. In order to constitute servants of the same master fellow-servants, it is essential that they shall be at the time of the injury directly co-operating with each other in the particular business in hand, and, if the jury believe from the evidence that the plaintiff, Olsen, and the young man, Ring, who was operating the signal wire were in the employ of the defendant company, and that they were directly co-operating with each other in the particular business in hand, or that their usual duties brought them into habitual association, so that they might exercise an influence upon each other promotive of proper caution, then you are instructed, as a matter of law, that the plaintiff and said young man operating said signal wire at the time of his alleged injuries were fellow-servants, and, if the jury believe from the evidence that the injury received by the plaintiff was occasioned by his own carelessness and negligence, or through the carelessness and negligence of this other young man operating the signal wire, who was thus assisting him at the time and place mentioned in the complaint, then the defendant would not be liable to the plaintiff if the defendant was otherwise without fault, and the jury should find a verdict for the defendant. That embraces the proviso that the plaintiff was without fault in providing one who was not competent. And that is the reason why I have specially called your attention to the distinction between the negligence of fellow-servant and negligence of the master in selecting a competent fellow-servant. Alleged negligence of the defendant, as the plaintiff in failing to select a competent person to

operate the signal wire claims, should be distinguished from the alleged negligence of a person operating a signal wire as a fellow-servant. If you find from the evidence the plaintiff knew of the defect in the signal wire, and informed defendant's foreman of such, and the foreman promised to have same repaired, or that repairs would be made, plaintiff continued in the service of the defendant, plaintiff because of that fact, if it is a fact, would not be attributable to contributory negligence unless he continued in defendant's service longer than was reasonably necessary for the removal of the cause, unless you find from the evidence the danger was so great a person of ordinary prudence would not have consented to concur, even though diligent to remove it." There was a verdict and judgment thereon for plaintiff, and defendant appeals.

REVERSED.

For appellant there was a brief over the name of *Rauch & Senn,* with an oral argument by *Mr. Frank S. Senn.*

For respondent there was a brief, with oral arguments by *Mr. George G. Bingham* and *Mr. Louis J. Adams.*

Opinion by MR. CHIEF JUSTICE McBRIDE.

1. The complaint is not so definite as it should have been made in regard to the details of the negligent acts or omissions of defendant, which it is claimed brought about the injuries suffered by plaintiff; but, taking it as a whole, we think it sufficiently appears that it was plaintiff's intention to predicate his right to recover upon, first, the failure of defendant to furnish a suitable signal wire, and, second, upon its employing an incompetent signalman. In the absence of a demurrer, or a motion to make more definite and certain, or a

motion to compel plaintiff to elect upon which aspect of his complaint he would proceed, we think the complaint was sufficient to justify the court in admitting testimony as to either theory, or both.

2. Defendant denies any negligence whatever in the premises, and attempts to plead assumption of risk on the part of plaintiff in the following terms: "That on the 2d day of February, 1910, and for some time prior thereto, this plaintiff was in the employ of this defendant at its logging camp near Silverton, Oregon, in the capacity of a hook-tender. That this plaintiff was an experienced man at this kind of work, and fully knew, realized, and appreciated all of the dangers, risks, and hazards of his employment as such hook-tender, and on said 2d day of February, 1910, this plaintiff assumed all of the dangers, risks, and hazards incident to his employment. That the alleged injury of which he complains was the result of one of the ordinary risks of the work that he was doing on the said 2d day of February, 1910, at the time he met with said alleged injuries." Taking this allegation separately from the general answer and denial, it amounts to a mere legal conclusion, and presents no issuable fact. Reading it in connection with the previous denial that the wire was rotten, knotted, and unfit for use, it presents practically the defense that the wire was suitable for the purpose intended, and that plaintiff assumed the risks incident to his employment with a sufficient wire in use. If plaintiff knew the wire was old and rotten and knotted, so as to be liable to catch on the brush and become unworkable, this should have been pleaded, instead of the statement that he knew the risks of his employment, which risks are not specified in the complaint, and that he assumed such unspecified risks, which is a mere conclusion of law. We conclude that the question of assumption of risk is not in the case.

3, 4. It is claimed that the court erred in admitting testimony tending to show that plaintiff had informed defendant's foreman of the condition of the wire, and requested him to furnish a new one, and that the foreman had promised to supply it, and failed to do so. It is urged with much plausibility that, in the absence of any pleading on the part of plaintiff of such request and promise, the evidence was not admissible. There is no lack of authority, coming generally from those courts who hold that the plaintiff must in his complaint negative assumption of risk and contributory negligence, that, where the plaintiff seeks to recover in a case in which he relies upon an unfulfilled promise to repair, he must plead and prove the promise, and allege the nonfulfillment of it. This is notably the case in Indiana, Vermont, Rhode Island, Connecticut and Kentucky. But in this state assumption of risk, like contributory negligence, is an affirmative defense. It is incumbent upon the plaintiff to aver and prove the injury and the negligent act of the defendant producing it. If the defendant wishes to show that plaintiff had previous knowledge of the defect, and assumed the risk, it is its duty to plead that knowledge in such terms that the plaintiff may specifically controvert the defense by pleading and proof. There is nothing in the answer which charges that plaintiff knew that the signal wire was spliced or knotted or out of condition. On the contrary, the pleading is to the effect that it was sufficient for the purpose, and that the accident was one of the ordinary risks assumed by him, or was caused by his own negligence or that of a fellow-servant. Under these circumstances we think that the testimony was admissible, and the instructions predicated thereon proper. There was no evidence on the part of the boy, and the court erred in submitting this branch of the case to the jury.

5. Among the matters, the court gave the following instruction: "The defendant must also provide safe and suitable appliances and competent fellow-servants, and the risk was not in itself an assumed risk." This is going further than the law warrants, in that it makes the duty of the employer absolute, and eliminates the element of reasonable care. An employer, aside from those duties enjoined by statutes passed since this cause arose, is required to use reasonable care and diligence to provide and maintain reasonably safe appliances, and to exercise like care and diligence in the selection of competent servants, and here his duty in these respects ends. The instruction given would practically make him an insurer.

It follows that the judgment will be reversed, and, as the pleadings both of the plaintiff and defendant are ambiguous, and may be corrected so that clearly cut issues can be presented, the cause will be remanded to the court below for a new trial. REVERSED.

MR. JUSTICE BEAN, MR. JUSTICE EAKIN and MR. JUSTICE McNARY concur.

---

Motion to Enjoin a Suit Pending Appeal, denied June 3, 1913.

On the Merits, argued September 3, decided September 16, rehearing denied October 14, 1913.