Argued February 14, reversed April 16, rehearing denied May 28,
1929.

# JOHN N. ADSKIM *v.* OREGON-WASHINGTON
# RAILROAD & NAVIGATION CO.

(276 Pac. 1094.)

For appellant there was a brief over the names of *Mr. A. C. Spencer* and *Mr. F. J. Betz,* with an oral argument by *Mr. W. A. Robbins.*

For respondent there was a brief and oral argument by *Mr. Frank C. Hanley.*

BEAN, J.—Plaintiff assigns as negligence the placing of said pile of gravel and cinders, between said passing and main track, obstructing the footpath, prior to the accident, the maintaining of said pile of gravel and cinders there at the time of the accident, and the failure of defendant to place a light thereon or visible signal of warning, or to warn plaintiff of the presence of the gravel and cinders.

Defendant, by its answer, denied the principal allegations of plaintiff's complaint and pleaded plaintiff's assumption of risk as a defense. At the appropriate time the defendant moved for a nonsuit and directed verdict, which motions were denied by the court.

Defendant, as its fourth assignment of error, asserts that the court erred in denying defendant's

motion for a nonsuit and for a directed verdict; in refusing to give defendant's requested instruction to return a verdict in favor of defendant. These matters should be first considered together.

■■ The federal Employers' Liability Act (U. S. Code, Tit. 45, Chap. 2, §§ 51–59 [45 U. S. C. A., §§ 51–59]), provides that every common carrier by railroad, while engaged in interstate commerce, shall be liable in damages to any person suffering injuries while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative for such injury or death resulting in whole or in part from the negligence of any of the officers, agents or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment. This legislation is exclusive and supersedes state legislation of like character: *Wintermute* v. *Oregon Washington R. & N. Co.*, 98 Or. 431, 436 (194 Pac. 420); *Kamboris* v. *Oregon Washington R. & N. Co.*, 75 Or. 358, 365 (146 Pac. 1097); *Second Employers' Liability Cases*, 223 U. S. 1, 53, 59 (38 L. R. A. (N. S.) 44, 56 L. Ed. 327, 32 Sup. Ct. Rep. 169); *Seaboard Airline Ry.* v. *Horton*, 233 U. S. 492, 501 (L. R. A. 1915C, 1, 58 L. Ed. 1062, 34 Sup. Ct. Rep. 635). The right of action given by the federal Liability Act is based upon the negligence of the employer; *Ebell* v. *Oregon Washington R. & N. Co.*, 110 Or. 665, 677 (221 Pac. 1062); *New York Cent. R. R.* v. *Winfield*, 244 U. S. 147, 150, 153 (Ann. Cas. 1917D, 1139, L. R. A. 1918C, 439, 61 L. Ed. 1045, 37 Sup. Ct. Rep. 546).

Defendant contends that there was not sufficient evidence of negligence on the part of defendant to

present the issue to the jury. The main controversy in this regard is in relation to the pile of gravel and cinders being left between the main track and the passing track where the testimony tended to show that such area was commonly used by the company's employees as a footpath and where they often alighted from the trains in front of the depot to go and get their orders.

The plaintiff testified that the day before the accident he had used the footpath and it was unobstructed and the surface thereof was even and level with the top of the ties, and had been for about two months prior to October 17, 1925; that when he alighted from the box-car he stepped into a pile of gravel and cinders about eighteen inches high, four feet wide and six or eight feet long, obstructing the area between the main and passing tracks.

The testimony also indicated that about two and one-half months before the accident, the company had been ballasting its main line along by the station at Hilgard; and the testimony of George Vorres, the section foreman of defendant, at Hilgard, was to the effect that on the day before the accident they had been surfacing or ballasting the main line with gravel a little west of the depot, and that they had been dumping cinders between the rails of the passing track. The testimony indicates that as usual they placed ties in front of a car, pushed the car with an engine and brushed the cinders down even with the rails of the passing track; that sometimes the cinders would be brushed around the end of the ties and be deposited at the side of the passing track.

The section foreman was asked, "What did you leave that big pile of gravel in there for?" And he

answered, "I never left no gravel." The same in effect was testified in regard to a big pile of cinders.

The testimony of Mr. Hofner, the station agent at Hilgard at that time, indicated that they dumped cinders that day and smoothed them even with the rail; that the section foreman "was supposed to kind of clean that up before he left." That he saw gravel between the main and passing tracks, higher than the level of the track a short distance west of the depot, before they got through ballasting the main line.

■ The testimony is conflicting in regard to the pile of gravel and cinders being between the main and passing track where plaintiff fell. This was a question for the jury to determine. Whether the dispute was mainly as to where the pile of gravel and cinders was located, or whether there was any such pile there, it is not necessary to determine, as in any event it was a matter for the jury. The same may be said in regard to whether the gravel and cinders were dumped in a pile, or scattered and then piled up preparatory to cleaning up and left over the night of October 17th.

It was not the theory of defendant that the pile of gravel and cinders was necessarily placed between the main and passing tracks to be used in ballasting or surfacing or repairing the roadbed, nor does the testimony of either the plaintiff or defendant so indicate. Defendant sought to show particularly by the section foreman that there was no pile of gravel at the place alleged.

■ It could not reasonably be expected that plaintiff, in alighting from the car in the dark, could spend much time in the examination of the ground with a small electric lantern. As the train moved the place for stepping down would be continually changing.

The testimony indicated that plaintiff did not know of the position of the pile of gravel or have any warning or notice thereof, and did not have any reason or cause to appreciate the danger of such an obstruction in his path when he alighted from the car. The jury did not find as a matter of fact that the plaintiff assumed the risk. We do not think that the court can find, as a matter of law, that the plaintiff assumed such risk.

The court instructed the jury in regard to the assumption of risk, in part, as follows:

"You are further instructed that plaintiff assumed only the risks of injury that were ordinarily incident to the employment in which he was engaged, * * *" (Here the court defined risk ordinarily incident to the employment and referred to the details of the alleged negligence and then added the following:)

"However, he is presumed to know all ordinarily visible and open risks, and in this connection, you are instructed that the negligence of the defendant, if any, was not one of such risks, unless the above acts constituting said negligence were of such usual and common occurrence that plaintiff would be presumed to have known thereof before his injury. You are further instructed that in addition to the assumption of ordinary risks which the employee is held to assume, that is, those risks which are incidental to the employment, or which may be said to be the usual and ordinary risks anyone engaged in that particular line of work would find, the employee will be held to assume those extraordinary or unusual risks of which he has knowledge, which he knows and appreciates, and which are so obvious that he must be held to have known and appreciated."

■ The testimony tended to show that the plaintiff, in the performance of his duties as a brakeman, alighted from the car in the usual way as he had often done. That he was not anticipating the danger of

stumbling over a pile of gravel and cinders and that this danger was not obvious. The testimony did not indicate that the plaintiff deliberately chose a hazardous method of work when a safe method was available. We think the question of assumption of risk was properly submitted to the jury upon the evidence in the case.

■ The testimony in the case, taking into consideration all of the circumstances, tended to support the allegations of plaintiff's complaint: *Renn* v. *Seaboard Air Line,* 170 N. C. 128 (86 S. E. 964); reviewed and affirmed, 241 U. S. 290 (60 L. Ed. 1006, 36 Sup. Ct. Rep. 567); *Baltimore & O. R. Co.* v. *Flechtner* (C. C. A.), 300 Fed. 318, writ of *certiorari* denied by 266 U. S. 613 (69 L. Ed. 468, 45 Sup. Ct. Rep. 95); *Gray* v. *Davis, Director Gen. of R. R.* (C. C. A.), 294 Fed. 57; *Cincinnati N. O. & T. P. Ry. Co.* v. *Davis* (C. C. A.), 293 Fed. 481. There was sufficient evidence to submit the case to the jury. There was no error in the court denying the request of defendant for a nonsuit and a directed verdict in favor of defendant.

The first assignment of error is that the court erred in instructing the jury that if the defendant failed and neglected to furnish the plaintiff with a safe place in which to work and to keep and maintain such place in a safe condition, their verdict should be for the plaintiff, because said instruction incorrectly states the law, and in effect, makes the defendant an insurer of the safety of its employee. Citing *Olsen* v. *Silverton Lbr. Co.,* 67 Or. 167, 178 (135 Pac. 752); *Millen* v. *Pacific Bridge Co.,* 51 Or. 538, 547 (95 Pac. 196); *Chambers* v. *Everding & Farrell,* 71 Or. 521, 533 (136 Pac. 885, 143 Pac. 616); *Seaboard Air Line Ry.* v. *Horton,* 233 U. S. 492, 501 (L. R. A. 1915C, 1, 58

L. Ed. 1062, 34 Sup. Ct. Rep. 635); *Chicago & N. W. Ry.* v. *Payne,* 8 Fed. (2d) 332, 334.

The court in charging the jury first defined negligence and due care, and stated they "are relative terms and what, in one situation, might be due care, might be negligence in another," and instructed the jury in regard to the burden of proof and proximate cause. At plaintiff's request the court instructed the jury as follows:

"You are therefore instructed if you believe from a preponderance of the evidence that plaintiff was getting off said moving train on to the foot path, or space between defendant's main track and passing track in front of defendant's depot at Hilgard, Oregon, in the prosecution of his duties as a brakeman, and that in so doing he was exercising due care and caution and if you further find by a preponderance of the evidence that defendant, prior to said time, had carelessly and negligently placed and at said time carelessly and negligently maintained in said space between said main and passing track, where plaintiff was required to alight, a pile of loose gravel and cinders about a foot and one-half high, obstructing said space and foot path, and defendant carelessly and negligently failed and neglected to warn plaintiff of the presence of said pile of gravel and obstruction in said space, and that defendant failed and neglected to have a light or other visible signal of warning of the presence of said pile of gravel and cinders in said foot path, so that such signal could be seen by plaintiff in the dark in time to warn him of the presence of said pile of gravel and cinders before alighting thereon, and that by so doing, defendant failed and neglected to furnish plaintiff with a safe place to work and to keep and maintain said place in a safe condition, and that such negligence, or one or more of said acts of negligence, if you find said acts to be negligent, was the direct and proximate cause of plaintiff striking said pile of loose gravel and cinders,

thereby causing him to lose his equilibrium and fall to the ground, and if you further find that plaintiff sustained in such fall any of the injuries alleged in his complaint, then your verdict should be for the plaintiff, unless plaintiff assumed the risk, as will be explained hereafter."

■ It will be noticed that the instruction complained of makes a concrete application of the law, as given by the court, to the facts in the case as alleged in the complaint. Attention of the jury was directly called to this part of the charge and they were informed in effect that if the defendant in doing the things, and failing to do the things, enumerated "failed and neglected to furnish plaintiff with a safe place to work and to keep and maintain said place in a safe condition, and that such negligence, or one or more of said acts of negligence, if you find said acts to be negligence, was the direct and proximate cause of plaintiff's striking said pile of loose gravel and cinders," thereby causing him to fall; and if they found that plaintiff thereby sustained any of the injuries alleged in the complaint, then their verdict should be for the plaintiff, unless the plaintiff assumed the risk.

■ The instruction was broader than the law warrants. It is contrary to the decisions of this court and the Supreme Court of the United States. It makes the duty of the defendant employer absolute in furnishing the plaintiff a safe place to work and eliminates the element of reasonable care. Under the federal Employers' Liability Act, an employer is required to use reasonable care and diligence to the end that the place where the work is to be performed may be safe for the workman: *Olsen* v. *Silverton Lbr. Co.*, 67 Or. 167, 178 (135 Pac. 752) ; *Seaboard Airline*

*Ry.* v. *Horton, supra; Chicago & N. W. Ry.* v. *Payne,* 8 Fed. (2d) 332, 334.

■ The rule announced has been consistently applied by the federal courts in actions under the federal Employers' Liability Act. In cases brought under that act we are governed by the federal authorities. In the leading case of *Seaboard Airline Ry.* v. *Horton, supra,* the United States Supreme Court had under consideration the following instruction: "It is the duty of the defendant to provide a reasonably safe place for the plaintiff to work and to furnish him with reasonably safe appliances with which to do the work." The court held this and similar instructions to be reversible error. At pages 501 and 502 of 233 U. S. the court records the following language:

"But, plainly, with respect to the latter as well as the former ground of liability, it was the intention of Congress to base the action upon negligence only, and to exclude responsibility of the carrier to its employees for defects and insufficiencies not attributable to negligence. The common law rule is that an employer is not a guarantor of the safety of the place of work or of the machinery and appliances of the work; the extent of its duty to its employees is to see that ordinary care and prudence are exercised, to the end that the place in which the work is to be performed and the tools and appliances of the work may be safe for the workmen. (Citing cases.) To hold that under the statute the railroad company is liable for the injury or death of an employee resulting from any defect or insufficiency in its cars, engines, appliances, etc., however caused, is to take from the act the words 'due to its negligence.' The plain effect of these words is to condition the liability upon negligence; and had there been doubt before as to the common law rule, certainly the Act now limits the responsibility of the company as indicated. The instructions above quoted imposed upon the

employer an absolute responsibility for the safe condition of the appliances of the work, instead of limiting the responsibility to the exercise of reasonable care.''

In *Millen* v. *Pacific Bridge Co.,* 51 Or. 538 (95 Pac. 196), as shown at page 547, this court said:

''There is no controversy over the rule that it is the personal and absolute duty of the master to exercise reasonable care and caution to provide his servants with a reasonably safe place to work; but it is urged by defendant that the master is not an insurer of the safety of the servant, and therefore is not bound to furnish an appliance or machinery or a place that is absolutely safe, and that his duty in this regard is discharged when he exercises reasonable care and caution to that end, and the presumption is that he has discharged his duty. This may be conceded to be the law.''

In the case of *Olsen* v. *Silverton Lumber Co.,* 67 Or. 167 (135 Pac. 752), the trial court instructed the jury as follows:

''It was the duty of the defendant to provide a reasonably safe place for the plaintiff to work, having reference to the character of the work plaintiff was required to do. The defendant must also provide safe and suitable appliances and competent fellow-servants, * * ''

Plaintiff recovered a judgment, in reversing which this court, speaking by Mr. Justice McBride, said at page 178:

''This is going further than the law warrants, in that it makes the duty of the employer absolute, and eliminates the element of reasonable care. An employer, aside from those duties enjoined by statutes passed since this cause arose, is required to use reasonable care and diligence to provide and maintain reasonably safe appliances, and to exercise like care

and diligence in the selection of competent servants, and here his duty in these respects ends.''

■ ■ We have carefully read all of the charge of the court to the jury and do not find that the instruction complained of was cured. We take the instruction as a whole. It is contended by plaintiff that the exception to the giving of the instruction ''for the reason that the same did not state the law, was not applicable to the facts shown by the testimony in the case and was misleading and inconsistent,'' was not sufficiently definite to point out to the trial court the particular part of the instruction excepted to and wherein the statement of law was erroneous. Citing *Bramwell* v. *Rowland*, 123 Or. 33 (261 Pac. 57); *Thomas* v. *Smith-Wagner Co.*, 114 Or. 69 (234 Pac. 814); *Wells* v. *Clark-Wilson Lbr. Co.*, 114 Or. 297, 324 (235 Pac. 283), and other cases. The opinions in the cases cited do not support the contention of plaintiff in this respect. These cases were where the exception was taken to the charge to the jury as a whole, or were very general in their nature, and did not pertain to a substantive statement of the law.

■ At the request of defendant the court instructed the jury as follows:

''But risks of another sort not naturally incident to the occupation may arise out of the failure of the employer to exercise due care with respect to providing a safe place to work and suitable and safe appliances for the work.''

This instruction is a correct statement of the law. It was given in relation to the question of assumption of risk, and did not operate to cure the former erroneous instruction. It contradicts the instruction previously given by the court quoted in the first assignment of error. By the two instructions entirely

different rules of law concerning the degree of care owed by the master to the servant are enunciated. The court did not point out the inconsistency or correct its former error (into which it was no doubt led by the request of the plaintiff), which might have been done by comparing the language of the two instructions, but left the jury to choose between two contradictory and inconsistent rules of law, one of which was correct and the other incorrect. The latter rule contained in the first instruction quoted, pointed much more directly to the facts in the case and would be much more likely to attract the attention of the jury. In the case of *Morrison* v. *McAtee*, 23 Or. 530 (32 Pac. 400), this court considered certain contradictory instructions given by the trial court concerning the measure of damages and reversed the judgment. See, also, *Eyre-Shomaker Co.* v. *Mackin*, 116 Md. 58 (81 Atl. 267). It was a case where two inconsistent instructions were given.

And in *Ratner* v. *Chicago City R. R. Co.*, 233 Ill. 169 (84 N. E. 201, 203), it is said:

"Even though instructions may supplement each other, and it is always necessary to consider them as a series, yet each one must state the law correctly as far as it goes, and all should be in harmony, so that the jury may not be misled."

In *Cox* v. *Rosenvinge*, 4 N. J. Misc. Rep. 949, 951, 135 Atl. 59, 60, the Supreme Court of New Jersey, after finding an instruction erroneous, said:

"It is true that the trial judge modified this instruction to some extent in other portions of his charge, but the rule is well settled that an erroneous instruction followed or accompanied by a correct one is not cured by the latter unless it is also expressly withdrawn; the reason being that the jury is left at liberty to adopt either of the contrary instructions."

See *Clark* v. *State,* 159 Ind. 60 (64 N. E. 589, 591), wherein it was said:

"These instructions covered the ground fully, and were accurate and unexceptionable. They were, however, general in their character. While it is true that instructions must be considered as a whole and that it is sufficient if, taken together, they state the law correctly, the general instructions given cannot cure the error committed in giving the specific instruction."

■ A third assignment of error is that the court erred in instructing the jury that the plaintiff was entitled to recover if the defendant was guilty of any one of the several concurring elements of negligence alleged in the complaint. Defendant contends that where negligence is alleged to consist of several concurring acts or elements, none of which is alone sufficient to sustain a recovery, all such elements must be proved. Citing *Wormsdorf* v. *Detroit City Railway Co.,* 75 Mich. 472 (13 Am. St. Rep. 453, 42 N. W. 1000, 1002); *Kirn* v. *Harvey,* 200 Mo. App. 233 (208 S. W. 479); *Western Ry. of Ala.* v. *McPherson,* 146 Ala. 427 (40 South. 934, 936); *Williams* v. *G. H. & S. A. Ry.,* 34 Tex. Civ. App. 145 (78 S. W. 45); *San Antonio & A. P. Ry. Co.* v. *Trigo et al.* (Tex. Civ. App.), 101 S. W. 254, 256; *Giles* v. *Michigan Central R. R. Co.,* 278 Mo. 350 (212 S. W. 873, 874); *Terre Haute & I. R. Co.* v. *McCorkle,* 140 Ind. 612 (40 N. E. 62, 64, 67), and other cases.

The negligence, as alleged in plaintiff's complaint, consists practically of negligence pertaining to one thing, made up of the elements or concurring acts. The matter complained of in the charge is merely descriptive, and, while not absolutely correct, we find by referring to page 489 of the transcript, contain-

ing defendant's requested instructions, that the learned counsel for defendant used practically the same language as the court used in referring to the acts of negligence. In this request we read: "Under that act it is necessary for the plaintiff to allege and prove by the testimony that the defendant was guilty of negligence in one or more of the particulars named in the complaint * * ." The error, in this respect, was invited by defendant. We are not prepared to say the instruction was a reversible error. But see *San Antonio & A. P. Ry. Co.* v. *Trigo et al.* (Tex. Civ. App.), 101 S. W. 254, 256; *Giles* v. *Michigan Central R. R. Co.,* 278 Mo. 350 (212 S. W. 873, 874); *Terre Haute & I. R. Co.* v. *McCorkle,* 140 Ind. 613 (40 N. E. 62, 64, 67).

On account of the error above mentioned, the judgment of the Circuit Court must be reversed. It is so ordered.

REVERSED. REHEARING DENIED.

COSHOW, C. J., and BROWN and BELT, JJ., concur.